# CASES IN CHANCERY.

## STRONG vs. WILKIN and others.

The general personal estate of a female infant is bound by a settlement made upon her marriage, where the property is of such a character that the husband would become entitled to it immediately, upon the marriage, were it not for such settlement. And in cases where the husband takes the legal title to his wife's personal estate, by virtue of the marriage, charged with her equity, such a settlement made by him, even after the marriage, with power to her to dispose of the property by will, would at law be binding upon him in the event of his surviving her.

It would also be binding upon the wife's equitable interest in the property; the husband being entitled to the immediate possession and absolute control of such property, upon making a reasonable provision for the wife and her children.

The article of the revised statutes relative to wills of personal property and the probate of them, which provides that every male person of the age of eighteen years and upwards, and every female *not being a married woman*, of sixteen years or upwards, of sound mind, &c. *and no others*, may execute a will of his or her real or personal estate, does not prevent the execution by a feme covert of a power of appointment of personal estate, by will, where the legal title of such estate is in trustees with power to her to appoint the same by an instrument in the nature of a will.

A will of personal property, made by an' infant feme covert, previous to the revised statutes, is a good execution of a power of appointment under a marriage settlement authorizing her, at her decease, to dispose of the capital of the fund in such manner as she might by will direct; although her death did not take place until after the revised statutes went into operation.

Under the article of the revised statutes relative to powers, a married woman may execute a power, either by grant or by devise, according to the authority given by such power.

The testamentary instrument which a married woman executes under a power of appointment, either as to her real or personal estate, is not strictly a will; nor does it operate as such in the proper legal sense of the term. It operates as an appointment; and the devisee or legatee takes the property by the force of the power.

THIS case came before the chancellor upon bill and answer, and upon a master's report of the facts in relation to the rights

of such of the defendants as were infants.   The object of the suit was to establish a will of the complainant's deceased wife, as a valid disposition of her separate estate held in trust; such will having been lost by accident, or fraudulently and feloniously taken and destroyed.   The complainant was married to his late wife in June, 1828; she being then eighteen years of age, and entitled to a large personal estate.   By an antenuptial agreement made by her and the complainant, and in contemplation of their intended marriage, it was agreed between them that her property should be conveyed to trustees for her separate use ; such trustees to pay her the interest or income during her life, and upon her decease during the lifetime of the complainant, to apply the capital of the fund in such manner as she should by will direct; and that if she should die during her coverture with him, without disposing of such property by will, the same should go to her children in equal proportions; and in case she should leave no child or children, then that the same should go to the complainant.   A deed of trust, containing the said agreement, was thereupon made and executed by them, and by Wilkin, Graham and Booraem, as trustees, by which the property was conveyed to such trustees and to the survivor of them, upon the before mentioned trusts.   Booraem, one of the trustees, having died after the marriage, and after Mrs. Strong had arrived at full age, she and her husband, together with the surviving trustees, executed another deed or instrument whereby M. Van Gieson was appointed a co-trustee with Wilkin and Graham; and the property was to be held by those three trustees, and the survivors of them, upon the trusts contained in the antenuptial agreement; which agreement was thereby confirmed.

The will in question was made by Mrs. Strong in January or February, 1829, in the presence of three witnesses, and was delivered to Graham, one of the trustees, for safe keeping; and ne deposited it in a trunk with other valuable papers, which trunk with its contents was stolen from his office some time in 1836, and was never afterwards discovered.   By that will she gave and bequeathed to her husband, the complainant, in case

---

*Strong v. Wilkin.*

---

he survived her, the interest, income or avails of all her property, during his life, free from the power or control of his creditors. And she directed that the property, after his death, should be divided equally among her children, and in case no such children should survive her husband, then she directed that the property should go to her brothers and sisters, then living, share and share alike. Mrs. Strong died in 1843 without having revoked or altered her will; leaving her husband and seven children surviving her.

*S. A. Foote,* for the complainant.

*B. Whiting,* for the infant defendants.

THE CHANCELLOR. The infant defendants are deeply interested in establishing the validity of the antenuptial settlement in this case. For, the whole property of their deceased mother being personal estate, it would belong to the complainant, by virtue of his marital rights and under the statute of distributions, if the antenuptial agreement and deed of trust should be held to be invalid, upon the ground that she was under age at the time of its execution by her. In this case the husband was an adult and was clearly bound by the settlement, so far as he gave up his right to property to which he would have been absolutely entitled by virtue of his marital rights if the settlement had not been made. And his intended wife relinquished no right by the settlement; but on the contrary she secured to herself the whole income of the property during her coverture, and the right to dispose of it as she pleased at her death. She also secured the property to the children of the marriage, in case she should die without appointing it by will. Nor did she relinquish any right in the property which she would have been entitled to by survivorship in case she had outlived her husband. For, by the terms of the settlement, the whole property was in that event to belong to her absolutely. This case, therefore, steers clear of the question whether an infant, by an antenuptial contract, can bind her interest in real estate, or her equitable interest in personal prop-

Strong v. Wilkin.

erty which would not belong to her husband by virtue of the marriage alone. In the case of *Simpson* v. *Jones*, (2 *Russ.* & *Myl. Rep.* 376,) Sir John Leach says, "the general personal estate of a female infant is bound by a settlement made on her marriage, because such personal estate becomes, by the marriage, the absolute property of the husband, and the settlement is in effect his settlement and not hers." That is undoubtedly the case where the property of the infant is of such a character that the husband would be entitled to it absolutely, immediately upon the marriage. And in cases where he takes the legal title to his wife's personal estate, by virtue of the marriage, charged with her equity, such a settlement made by him, after the marriage, would be binding at law in the event which has occurred. And certainly it would be binding upon her equitable interest in the property. For, all that the wife is entitled to by what is called the wife's equity, is a reasonable provision for herself and her children ; and the husband in such a case is entitled to the immediate possession and absolute control of the property, upon making such a provision.

The execution of her will in 1829, and the substance of the same, is proved by two witnesses, as required by the statute on this subject. (2 *R. S.* 68, § 67.) And the evidence is also sufficient to establish the fact that the will in question was fraudulently destroyed in the lifetime of the testatrix. The only remaining question, therefore, is, whether a will of personal property, made by an infant feme covert in 1829, was a good execution of the power of appointment under this marriage settlement, she having lived several years after the revised statutes went into operation.

By the common law an infant was capable of making a will of personal estate. And a feme covert was also authorized to make a will of her separate estate, by the consent of her husband. The precise age at which an infant was allowed to bequeath personal property was not so clearly settled as to be free from doubt; though Blackstone appears to have been of the opinion that females at the age of twelve, and males at the age of fourteen, were competent. (2 *Bl. Com.* 499 ; *Harg. note to Co.*

Strong *v.* Wilkin.

*Lit.* 89, *b.*) But all writers on the subject admit that at the age of eighteen an infant is competent to dispose of his personal estate by will. And in *Hearle* v. *Greenbank*, (3 *Atk. Rep.* 709,) where an infant feme covert was of the age of seventeen, Lord Hardwick decided that she was competent to make a valid will disposing of her separate personal estate in the hands of trustees. Here the testatrix was nearly nineteen years of age at the time of making the will in question; and if she had died before the revised statutes went into operation, there could be no possible doubt as to its validity.

The article of the revised statutes relative to wills of personal property and the probate of them, provides that every male person of the age of eighteen and upwards, and every female *not being a married woman,* of sixteen years or upwards, of sound mind and memory, *and no others,* may give and bequeath his or her personal estate by will in writing. (2 *R. S.* 60, § 21.) If this section of the revised statutes applies to the case of the execution of a power of appointment of personal estate by will, where the legal title of such estate is in trustees, with power to a married woman to appoint the same by an instrument in the nature of a will, it will absolutely prevent any such appointment by a feme covert, at any age, hereafter. I cannot however think that the section referred to was intended by the legislature to apply to such a case. For the article of the revised statutes in relation to powers, expressly authorizes a married woman to execute a power, either by grant or by devise, as may be authorized by such power. And she is also authorized to take a general and beneficial power to dispose of lands during her marriage. (*See* 1 *R. S.* 732, § 80; *Idem,* 735, § 116.) It is wholly impossible, therefore, to suppose that the legislature could have intended to give to a feme covert this right to dispose of real estate by devise, in which she had a beneficial interest under a power, and to deprive her of the right to make a similar disposition of her personal property by will; where such property was held by trustees for her separate use, with power to appoint the same by will at her death. The testamentary instrument which the wife executes, under a power of appointment, either as to her

real or personal estate, is not strictly a will, nor does it operate as such in the proper legal sense of the term. But it operates as an appointment; and the devisee or legatee takes the property by the force of the power. The wife, therefore, by the common law, was authorized to execute a power as to real estate by an instrument in the nature of a will, although femes covert were expressly excepted out of the statute of Henry the 8th, authorizing devises of real estate. Whatever may be the construc-tion of these provisions of the revised statutes on this subject, however, in relation to wills executed after December, 1829, those provisions do not apply to the case under consideration. For the seventieth section of the title of the revised statutes in rela-tion to wills and testaments of real and personal property, de-clares that the provisions of that title shall not be construed to impair the validity of the execution of any will made before the chapter in which that title is contained shall take effect; nor shall it affect the construction of any such will. (2 *R. S.* 68.) This provision covers the case of wills executed before the first of January, 1830, although the testator died afterwards, as well as those which had taken effect previous to that time.

There must, therefore, be a decree in this case, establishing the will of Mrs. Strong, according to the terms and conditions thereof, as stated in the complainant's bill. The decree must also declare that such will was a valid execution of the power of ap-pointment under the provisions of the antenuptial contract and deed of settlement; and it must confirm the appointment of Van Gieson, as one of the trustees, in the place of the deceased trustee. There does not appear to be any necessity for taking out letters testamentary to enable the trustees to execute their trust in confor-mity to the directions of the will. By the terms of the trust the trustees, in case of the death of Mrs. Strong before her husband, were to appropriate, apply, and dispose of the trust funds, in such manner as she should by her will order and direct. And although there was an executor named in the will, there does not appear to be any direction to pay over the fund to him as a trustee, or that he has any duty to perform as executor. But the parties seem to have contemplated a continuance of the trust

Brindernagle v. German Ref. Church.

fund in the hands of the trustees, after the death of Mrs. Strong, in the event which has occurred.   For the deed of 1842 provides for the appointment of a new trustee or trustees, from time to time, during the life of her husband as survivor.   The legal effect of the will, therefore, was to direct the trustees to pay the interest, or income, of the trust fund to the complainant for life, and to distribute the principal thereof among the children, at his death, if they should survive him.   The decree then must direct the trustees, or the survivors of them, and the new trustees who may be appointed in their places from time to time, to keep the trust fund, as it existed at the death of the testatrix, invested in good securities during the life of the complainant, and to pay over to him the interest or income which has arisen since that time, or which hereafter may arise, after deducting the necessary costs, charges, and expenses of executing the trust; and to pay over and distribute the capital of the fund at his death to the persons, and in the manner, directed by the will, as set forth in the bill in this cause.

The costs of the guardian ad-litem of the infant defendants, and the costs of the trustees, as well as of the complainant, should be paid out of the income of the fund, if any, which had accrued before the death of the testatrix, and which had not then been paid over to her.  And if that is not sufficient, the residue should be paid out of the income which has subsequently accrued.