## CHANLER v. KELSEY, COMPTROLLER OF THE STATE OF NEW YORK.

ERROR TO THE SURROGATE'S COURT OF THE COUNTY OF NEW YORK AND STATE OF NEW YORK.

No. 240.   Argued March 14, 1907.—Decided April 15, 1907.

Notwithstanding the common law rule that estates created by the execution of a power take effect as if created by the original deed, for some purposes the execution of the power is considered the source of title.

This court must follow the decision of the state court in determining that the essential thing to transfer an estate is the exercise of a power of appointment.

The imposition of a transfer or inheritance tax under ch. 284, Laws of New York, 1897, on the exercise of a power of appointment in the same manner as though the estate passing thereby belonged absolutely to the person exercising the power, does not, although the power was created prior to the act, deprive the person taking by appointment, and who would not otherwise have taken the estate, of his property without due process of law in violation of the Fourteenth Amendment; nor does it violate the obligation of any contract within the protection of the impairment clause of the Federal Constitution.

176 N. Y. 486, sustained.

THIS is a writ of error to the Surrogate's Court of the county of New York, State of New York, but its real purpose is to

review a decision of the Court of Appeals of the State sustaining an order of the Surrogate's Court, which imposed a transfertax upon certain estates arising under appointment by Laura Astor Delano, deceased. 176 N. Y. 486.

Laura Astor Delano was the daughter of William B. Astor. Upon the occasion of her marriage in 1844 to Frank H. Delano, Mr. Astor executed a deed in the nature of a marriage settlement, conveying certain real and personal property to trustees in trust to pay the income to said Laura Delano for life, with remainder to her issue in fee, or in default of issue, to her heirs in fee; and giving her power in her discretion to appoint the remainder "amongst her said issue or heirs, in such manner and proportions as she may appoint by instrument in its nature testamentary, to be acknowledged by her as a deed and in the presence of two witnesses or published by her as a will."

In the years 1848, 1849 and 1865 William B. Astor made other deeds, by way of addition to the original marriage settlement, substantially similar in their terms. That of 1848 conveyed certain real estate to Mrs. Delano for life, with power of appointment as to said premises, or any part thereof, "to and among her said issue, brothers, sister Alida, or their issue, in such manner and proportions as she may appoint by instrument in its nature testamentary, to be acknowledged by her as a deed in the presence of two witnesses or acknowledged by her as a will." The deed of 1849 conveyed to trustee certificates for $50,000 of the public debt of Ohio; "to hold the same in trust for the benefit of Laura Astor Delano during her life, and at her death to transfer and convey the capital of the said stock to her issue, but in case she left no issue, then to her surviving brothers and sister Alida and to the issue of any of them who died leaving issue; and said instrument contained a power of appointment to Laura Astor Delano as follows: 'Provided, however, that it shall be lawful for the said Laura, by any instrument executed duly as a will of personal estate, to dispose of the said capital unto and amongst her

issue, brothers, sister and their issue, in such shares and proportions as she may think fit and upon such limitations, by way of trust or otherwise, as in her discretion may be lawfully devised.'" These deeds were absolutely irrevocable, took effect upon delivery, and were not made in contemplation of the death of the grantor.

Laura A. Delano died June 15, 1902, in Geneva, Switzerland, leaving no descendants. By her last will and testament, duly admitted to probate in the county of New York on October 14, 1902, she exercised the power of appointment conferred in the deeds from her father in favor of the plaintiffs in error.

One of the plaintiffs in error, Arthur Astor Carey, a grandson of William B. Astor, and an appointee to whom Mrs. Delano had appointed the property originally conveyed by the deeds of 1848 and 1849, took an appeal from the order of the Surrogate's Court refusing to dismiss the petition to the Appellate Division of the Supreme Court, where it was held that the act under which the tax was imposed, as applied to this case, was unconstitutional. *Matter of Delano,* 82 App. Div. 147. The state comptroller appealed to the Court of Appeals from the decision of the Appellate Division.

That court sustained the right to impose the transfer tax upon the interests appointed by Mrs. Delano under the powers created by the deeds above referred to. Subsequent decisions were made *pro forma* and a final order on the last remittitur of the Court of Appeals was made in the Surrogate's Court, and the case brought here by all the plaintiffs in error.

*Mr. Lucius H. Beers* for plaintiff in error:

The power of the State to take property by means of a succession tax arises only when the succession is caused by the death of the former owner of the property taken.

Death is the generating source from which the particular taxing power takes its being. *Knowlton* v. *Moore,* 178 U. S. 41, 56; *Cahen* v. *Brewster,* 203 U. S. 543, 550; *Mager* v. *Grima,* 8 How. 490, 493; *United States* v. *Perkins,* 163 U. S. 625;

*Plummer* v. *Coler,* 178 U. S. 115, 124; *Matter of Swift,* 137 N. Y. 77, 83; *Matter of Sherman,* 153 N. Y. 1, 3–5; *Matter of Lansing,* 182 N. Y. 238, 248; *Minot* v. *Winthrop,* 162 Massachusetts, 113; *Re Wilmerding,* 117 California, 281; *State* v. *Dalrymple,* 70 Maryland, 294; *State* v. *Henderson,* 160 Missouri, 190; *State* v. *Alston,* 94 Tennessee, 674; *Kochersperger* v. *Drake,* 167 Illinois, 122; *Strode* v. *Commonwealth,* 52 Pa. St. 181.

The validity of a succession tax depends, not on the general taxing power of the State, but on the existence of a power in the State to regulate the particular succession sought to be "taxed."

In a series of decisions this court and the New York Court of Appeals have held that this is not a tax on property or a tax on persons. *United States* v. *Perkins,* 163 U. S. 625, 629.

The powers under which this property was appointed to the plaintiffs in error were created by deed *inter vivos* and that fact distinguishes this case from the case of *Orr* v. *Gilman,* 183 U. S. 278, where the power was created by will. See also *Cahen* v. *Brewster,* 203 U. S. 543, 551, where the precise distinction here contended for is pointed out.

The amendment of 1897 was not an exercise of the State's general power to tax, but was intended to impose a succession tax.

It is not necessary for the court to consider here, whether the statute would be constitutional if it were regarded as an exercise of the general taxing power of the State, for the New York Court of Appeals has in this case held that the statute in question "does not attempt to impose a tax upon property, but upon the exercise of the power of appointment." See *Matter of Pell,* 171 N. Y. 48.

There has been no succession to the remainders originally transferred by the deeds of 1844, 1848 and 1849 which would permit the imposition of a succession tax.

There can be powers which make the property involved practically the property of the donee, but those must give the donee the unlimited power of appointment. Such powers the

law treats as tantamount to ownership, at least so far as the rights of creditors are concerned. Here the powers are in trust and were limited to be exercised only in favor of certain descendants of the creator of the power. For these distinctions see *Matter of Lansing*, 182 N. Y. 238.

The instrument by which Mrs. Delano exercised these powers of appointment created by deed was not a "will" in so far as it exercised those powers.

The imposition of a tax under the amendment of 1897 will deprive the plaintiffs in error of property without due process of law.

The legislature has based this exaction on an hypothesis as to the facts, which it deliberately recognizes to be a false hypothesis.

In this case there has been no succession, and there can be no succession tax here unless it is within the power of the legislature to avoid constitutional limitations by "deeming" the facts to be what they are not.

' States have repeatedly attempted to treat an appointment as a succession for the purpose of collecting a succession tax, but such attempts have uniformly failed for the reason that an appointment is not legally a succession because the appointed property does not belong to the donee of the power. *Emmons* v. *Shaw*, 171 Massachusetts, 410; *Commonwealth* v. *Duffield*, 12 Pa. St. 277; *Commonwealth* v. *Williams*, 13 Pa. St. 29; *Matter of Stewart*, 131 N. Y. 274, 281; *Matter of Harbeck*, 161 N. Y. 211.

The amendment of 1897 in imposing a succession tax on the property of the plaintiffs in error impaired the obligation of a contract.

Each of the remaindermen named in the original deeds took a vested remainder subject to being divested only by the exercise of the power in favor of some other member of the class. *Root* v. *Stuyvesant*, 18 Wend. 257, 267.

A transfer tax cannot constitutionally be imposed on a remainder which vested before the tax was created. *Matter*

*of Pell,* 171 N. Y. 48, 55; *Matter of Lansing,* 182 N. Y. 238, 247, 248.

The clause of the United States Constitution providing that no State shall pass a law impairing the obligation of contracts applies to grants and other executed contracts, as well as to executory contracts. *Fletcher v. Peck,* 6 Cranch, 87, 136.

*Mr. David B. Hill* for defendant in error:

The instrument by which Mrs. Delano exercised the powers of appointment was a "will." Rev. Stat., Part 2, chap. I, title II, Art. III, § 110, or 1 Rev. Stats. 735, § 110.

At the time of the making of the deeds herein, Laura Astor Delano had the right given by § 110 above, to make a will for the purpose of exercising the power given by said deeds.

William B. Astor is presumed to have made these deeds with knowledge of this provision of law.

The decision of the Court of Appeals of the State of New York that the statute, chapter 284 of the laws of 1897, subdivision 5 of § 220 of the Tax Law, does not violate any provision of the constitution of the State of New York will be regarded as conclusive upon this court upon that question. *Orr v. Gilman,* 183 N. Y. 278; *People ex rel. Met. St. Ry. Co. v. N. Y. State Board of Tax Com'rs,* 199 U. S. 1; *Seneca Nation v. Christie,* 162 U. S. 283; *Missouri R. R. Co. v. Haber,* 169 U. S. 613; *Smiley v. Kansas,* 196 U. S. 447; *Hibben v. Smith,* 191 U. S. 310.

The legislature of the State of New York had the right to enact chapter 284 of the laws of 1897 (now subdivision 5 of § 220 of the Tax Law), and the same is not a violation of any of the provisions of the Constitution of the United States.

The legislature by this act does not impose a tax upon property, but it does impose a tax upon the exercise of a power of appointment.

It can make no difference when the right was given to the exercise of the power, or how it was created. No tax is made upon the giving of the power, but only upon the exercise by

the donee of the power of appointment. It does not impair the obligation of any contract between William B. Astor and the plaintiffs in error, made prior to the passage and enactment of the statute, nor does it deprive the plaintiffs in error of their property without due process of law, or deny to them the equal protection of the laws. *People ex rel. Eisman* v. *Ronner*, 185 N. Y. 293; *United States* v. *Perkins*, 163 U. S. 625; *McMillan* v. *Anderson*, 95 U. S. 37.

The right to take property by devise or descent is the creature of the law, and not a natural right—a privilege, and therefore the authority which confers it may impose conditions upon it. *Magoun* v. *Ill. Trust & Savings Bank*, 170 U. S. 283, 288; *United States* v. *Perkins*, 163 U. S. 625; *In re Cullom*, 145 N. Y. 593; *Wallace* v. *Myers*, 38 Fed. Rep. 184; *Matter of Hoffman*, 143 N. Y. 327.

MR. JUSTICE DAY, after making the foregoing statement, delivered the opinion of the court.

The tax in controversy was imposed under an amendment of the general transfer-tax law of the State of New York, chapter 284, Laws of 1897, which provides as follows:

"Whenever any person or corporation shall exercise the power of appointment derived from any disposition of property made either before or after the passage of this act, such appointment when made shall be deemed a transfer, taxable under the provisions of this act, in the same manner as though the property to which such appointment relates belonged absolutely to the donee of such power and had been bequeathed or devised by such donee by will; and whenever any person or corporation possessing such a power of appointment so derived shall omit or fail to exercise the same within the time provided therefor, in whole or in part, a transfer taxable under the provisions of this act shall be deemed to take place to the extent of such omissions or failure, in the same manner as though the persons or corporations thereby becoming entitled

to the possession or enjoyment of the property to which such power related had succeeded thereto by a will of the donee of the power failing to exercise such power, taking effect at the time of such omission or failure."

The validity of this tax was attacked in the courts of New York upon objections pertaining to both the Federal and state constitutions. The latter are not open here, and we shall consider the case only so far as it relates to the objections made to the validity of this statute by reason of alleged violations of the Federal Constitution. These are: First, that by the imposition of the tax the property of the beneficiaries is taken without due process of law, in violation of the Fourteenth Amendment; and, second, that such taxation violates the obligation of a contract within the protection of section 10 of Article I of the Federal Constitution.

The objection that the property is taken without due process of law is based upon the argument that the estate in remainder was derived from the deeds of William B. Astor and not under the power of appointment received from those deeds by Mrs. Laura A. Delano. In support of this contention, common law authorities are cited to the proposition that an estate created by the execution of a power takes effect in the same manner as if it had been created by the deed which raised the power; that the beneficiary takes, not under the execution of the power by the donee, but by authority and under grant from the grantor, in like manner as if the power and the instrument which created it had been incorporated into one instrument. 4 Kent's Com. 327; 2 Washburn, Real Property, 320. The argument is that the estate which arose by the exercise of the power came from William B. Astor and not from Laura A. Delano, and was vested long before the passage of the amendment of 1897, under the authority of which the tax was imposed, and to tax the exercise of the power therefore takes property without due process of law.

However technically correct it may be to say that the estate came from the donor and not from the donee of the power, it is

self-evident that it was only upon the exercise of the power that the estate in the plaintiffs in error became complete. Without the exercise of the power of appointment the estates in remainder would have gone to all in the class named in the deeds of William B. Astor. By the exercise of this power some were divested of their estates and the same were vested in others. It may be that the donee had no interest in the estate as owner, but it took her act of appointment to finally transfer the estate to some of the class and take it from others.

Notwithstanding the common law rule that estates created by the execution of a power take effect as if created by the original deed, for some purposes the execution of the power is considered the source of title. It is so within the purpose of the registration acts. A person deriving title under an appointment is considered as claiming under the donee within the meaning of a covenant for quiet enjoyment. 2 Sugden on Powers, 3d ed., 19.

"So on an issue to try whether the plaintiff was entitled by two writings, or any other, purporting a will of J. S., and the evidence was of a feoffment to the use of such person as J. S. should appoint by his will, in which case it was contended that the devisees were in by the feoffment and not by the will, the court held that this was only *fictione juris*, for that they were not in *without* the will, and therefore that was the principal part of the title, and such proof was good enough and pursuant to the issue, and a verdict was accordingly given for the plaintiff." 2 Sugden on Powers, 19, citing *Bartlett* v. *Ramsden*, 1 Keb. 570.

So, in the present case, the plaintiffs in error are not in *without* the exercise of the power by the will of Mrs. Delano.

By statute in England, for the purposes of taxation, it has been provided that the donee of the power shall be regarded, in case of a general power, as the one from whom the estate came. In *Attorney General* v. *Upton et al.*, L. R. 1 Ex. 224, the Court of Exchequer had under consideration the Succession Duty Act (16, 17 Vict. c. 51), and it was held that the

appointee under a general power of appointment, taking effect on the death happening since the commencement of the act, takes succession from the donee of the power. The testator, Admiral Fanshawe, by will devised certain lands to the use of his wife, Caroline Fanshawe, for life, remainder to such use as she should by deed or will appoint, and, in default of appointment, for the use and benefit of testator's nephews, C. F. and J. F. Fanshawe, and their issue. She by deed appointed to the use that trustees should after her death receive an annuity during the lives of the wife of the testator's nephew, and of the children of the nephew by her, in trust for the separate use of the wife, Elizabeth Fanshawe. Section 4 of the act, which is there construed, provides that any person having a general power of appointment, under any disposition of property, taking effect upon the death of any person dying after the time appointed for the commencement of the act, shall, in the event of his making any appointment thereunder, be deemed to be entitled at the time of his exercising such power to the property or interest thereby appointed as a succession derived from the donor of the power. All the judges agreed that under section 4 of the act the nephew's wife took the annuity as a succession from the testator's widow and not from the testator himself; that, therefore, a duty of ten per cent was payable. Bramwell, B., was of opinion that the duty was also payable under section 2, which provides that "every past or future disposition of property, by reason whereof any person has or shall become beneficially entitled to any property . . . shall be deemed to have conferred, or to confer, on the person entitled by reason of any such disposition . . . a succession." In speaking of this section the Baron said:

"Now, will these annuitants take by reason of the will of Admiral Fanshawe? We must look, not at the *causa remota*, but at the *causa proxima*, and that is the disposition of Caroline Fanshawe. Again, the act says, that the term predecessor 'shall denote the settlor, disponer, testator, obligor, ancestor, or other person from whom the interest of the successor is or

shall be derived.' From whom, then, is the interest derived? As I said in *Barker's case* (1), these are ordinary English words, and ought to be construed by lawyers as ordinary Englishmen would construe them. Now, not one man in a hundred would say that this interest was derived from Admiral Fanshawe or from any other person than the donee of the power. I do not mean to deny or attempt to cast any doubt on the rule of law that an appointee takes his estate from the donor of the power, but I say that it is a rule not applicable to the construction of this statute, and it is not true, as is supposed, that there is any decision of the House of Lords to the contrary."

The learned Baron seems to have gone farther, as to section 2, than his brethren were willing to. *Attorney General* v. *Mitchell*, L. R. 6 Q. B. D. 548. His observations are nevertheless suggestive.

While the entire bench recognized the common law rule that the estate is taken to come from the donor of the power, it enforced the statutory change as to a subsequent exercise of the power, treating the estate as coming from the donee, by whose act it was appointed to the beneficiary.

The statute of New York in question acts equally upon all persons similarly situated. It affects an estate which only became complete by the exercise of a power subsequent to its enactment.

The exercise of the power bestowing property in the present case was made by will. And we need not consider the case, expressly reserved by the Court of Appeals in its opinion, as to the result if it had been exercised by deed.

That the will was effectual to transfer the estate was ruled by the Court of Appeals, and its decision on this question is binding here, as was held in *Orr* v. *Gilman*, 183 U. S. 278, which came here for a review of a decision of the Circuit Court of Appeals of New York, rendered in *Matter of Dows*, 167 N. Y. 227, a case which arose under the same statute of 1897. In that case the testator devised real estate in trust to pay the income to his son for life, and, upon his death, to vest abso-

lutely and at once in his children and the issue of his deceased children, as his son should appoint by will. If, however, the son should die intestate the estate was to vest absolutely and at once in his children then living, and the issue of the deceased children. The son exercised the power of appointment by his last will, probated in 1899. The Court of Appeals held that the property was subject to the taxation imposed by the act of 1897; that such tax was on the right of succession and not on the property. It became important in that case to determine whether the property passed by virtue of the will of the donor, David Dows, Senior, and then became vested in the grandchildren, or only became vested in them when the power of appointment was exercised by the will of David Dows, Junior.

This court held that the answer to this question must, of course, be furnished by the Court of Appeals in that case. 183 U. S. 282. In other words, the Court of Appeals of New York had the exclusive right to construe instruments of title in that State, and determine for itself the creation and vesting of estates through wills under the laws of the State. "The Court of Appeals held that it was the execution of the power of appointment which subjected grantees under it to the transfer tax. This conclusion is binding upon this court in so far as it involves a construction of the will and of the statutes." 183 U. S. 288. In the present case the New York Court of Appeals has spoken in no uncertain language upon the subject:

"As the tax is imposed upon the exercise of the power, it is unimportant how the power was created. The existence of the power is the important fact, for what may be done under it is not affected by its origin. If created by deed its efficiency is the same as if it had been created in the same form by will. No more and no less could be done by virtue of it in the one case than in the other. Its effective agency to produce the result intended is neither strengthened nor weakened by the nature of the instrument used by the donor of the power to create it. The power, however or whenever created, authorized the donee by her will to divest certain defeasible estates

and to vest them absolutely in one person. If this authority had been conferred by will, instead of by deed, the right to act would have been precisely the same, and the power would have neither gained nor lost in force. . . .   176 N. Y. 493.

"As we said through Judge Cullen in the *Dows case:* 'Whatever be the technical source of title of the grantee under a power of appointment, it cannot be denied that in reality and substance it is the execution of the power that gives to the grantee the property passing under it.' This accords with the statutory definition of a power as applied to real estate, for it includes an authority to create or revoke an estate therein. (Real Property Law, § 111.) Such was the effect of the exercise of the power under consideration, for it both revoked and created estates in the real property and the interests in the personal property. No tax is laid on the power, or on the property, or on the original disposition by deed, but simply upon the exercise of the power by will, as an effective transfer for the purposes of the act." 176 N. Y. 494.

As in *Orr* v. *Gilman*, 183 U. S. *supra*, we must accept this decision of the New York Court of Appeals holding that it is the exercise of the power which is the essential thing to transfer the estates upon which the tax is imposed. That power was exercised under the will of Laura Delano, a right which was conferred upon her under the laws of the State of New York and for the exercise of which the statute was competent to impose the tax in the exercise of the sovereign power of the legislature over the right to make a disposition of property by will. *United States* v. *Perkins*, 163 U. S. 625, 628; *Magoun* v. *Illinois Trust & Savings Bank*, 170 U. S. 283, 288.

We cannot say that property has been taken without due process of law, within the protection of the Fourteenth Amendment, by the manner in which the Court of Appeals has construed and enforced this statute. *Orr* v. *Gilman*, 183 U. S. *supra*.

Nor do we perceive that the effect has been to violate any contract right of the parties. It is said that this is so, because

instead of disposing of the entire estate, ninety-five per cent of the property included in the power has been transferred and five per cent taken by the State; but as there was a valid exercise of the taxing power of the State, we think the imposition of such a tax violated no contract because it resulted in the reduction of the estate.

Certainly the remaindermen had no contract with the donor or with the State. For whether the remaindermen received aliquot parts of the entire estate or the same was divested in whole or in part for the benefit of others in the class, depended upon the exercise of the power by the donee. The State was not deprived of its sovereign right to exercise the taxing power upon the making of a will in the future by which the estate was given to the appointees.

We find no error in the judgment of the Surrogate's Court entered on the remittitur from the Court of Appeals, and the same is

*Affirmed.*

MR. JUSTICE HOLMES, with whom was MR. JUSTICE MOODY, dissenting.

I have the misfortune to differ from the majority of my brethren in this case, and although the argument which seemed and still seems to me unanswerable was presented and has not prevailed, I think that the principles involved are of sufficient importance to justify a statement of the reasons for my dissent. A state succession tax stands on different grounds from a similar tax by the United States or a general state tax upon transfers. It is more unlimited in its possible extent, if not altogether unlimited, and therefore it is necessary that the boundaries of the power to levy such taxes should be accurately understood and defined.

I always have believed that a state inheritance tax was an exercise of the power of regulating the devolution of property by inheritance or will upon the death of the owner,—a power

which belongs to the States; and I have been fortified in my
belief by the utterances of this court from the time of Chief
Justice Taney to the present day. *Mager* v. *Grima*, 8 How.
490, 493; *United States* v. *Perkins*, 163 U. S. 625, 627, 628;
*Magoun* v. *Illinois Trust & Savings Bank*, 170 U. S. 283, 288;
*Plummer* v.. *Coler*, 178 U. S. 115, 124, 126, 137; *Billings* v.
*Illinois*, 188 U. S. 97, 104; *Campbell* v. *California*, 200 U. S.
87, 94; *Cahen* v. *Brewster*, 203 U. S. 543, 550. See also *Matter
of Sherman*, 153 N. Y. 1, 4. For that reason the power is more
unlimited than the power of a State to tax transfers generally,
or the power of the United States to levy an inheritance tax.
The distinction between state and United States inheritance
taxes was recognized in *Knowlton* v. *Moore*, 178 U. S. 41, 58,
and whatever may be thought of the decision in *Snyder* v.
*Bettman*, 190 U. S. 249, I do not understand it to import a
denial of the distinction, reaffirmed by the dissenting members
of the court.    190 U. S. 256.

If then a given state tax must be held to be a succession tax
in order to maintain its validity, or if in fact it is held to be a
succession tax by the state court of which it is the province
to decide that matter, it follows that such a tax cannot be
levied except where there is a succession, and when some
element or step necessary to complete it still is wanting when
the tax law goes into effect. If some element is wanting at that
time, the succession depends, for taking effect, on the continu-
ance of the permission to succeed or grant of the right on the
part of the State; and, as the grant may be withdrawn, it may
be qualified by a tax. But if there is no succession, or if the
succession has fully vested; or has passed beyond dependence
upon the continuing of the State's permission or grant, an
attempt to levy a tax under the power to regulate succession
would be an attempt to appropriate property in a way which
the Fourteenth Amendment has been construed to forbid.
No matter what other taxes might be levied, a succession tax
could not be, and so it has been decided in New York. *Matter
of Pell*, 171 N. Y. 48, 55; *Matter of Seaman*, 147 N. Y. 69. .

It is not denied that the tax under consideration is a succession tax. The Court of Appeals treated it as such in the present case. It said: "If the power had been exercised by deed a different question would have arisen, but it was exercised by will and owing to the full and complete control by the legislature of the making, the form and the substance of wills, it can impose a charge or tax for doing anything by will." *Matter of Delano,* 176 N. Y. 486, 494, reversing *S. C.,* 82 App. Div. 147. That it was such a tax and valid for that reason was decided in *Matter of Dows,* 167 N. Y. 227, affirmed by this court. *Orr* v. *Gilman,* 183 U. S. 278, adopting the New York view, 183 U. S. 289. And these decisions and some of the other decisions of this court cited above were relied upon by the Court of Appeals. 176 N. Y. 492. See further *Matter of Vanderbilt,* 50 App. Div. 246; aff'd 163 N. Y. 597; *Matter of Lansing,* 182 N. Y. 238, 248. Probably the tax would be invalid for other local reasons besides those mentioned in *Matter of Dows,* but for the construction which it has received. *Matter of Pell,* 171 N. Y. 48, 60.

This being then a succession tax, I should have thought it plain that there was no succession for it to operate upon. More precisely, even if otherwise any element of succession could have been found, a matter that I think would need explanation, the execution of the power did not depend in any way upon the continued coöperation of the laws of New York by way of permission or grant. I am not concerned to criticise the statement of the Court of Appeals that in substance it is the execution of the power that gives to the grantee the property passing under it. It is enough if it is remembered that the instrument executing the power derives none of its efficiency in that respect from the present laws of New York. It is true that the instrument happens to be a will, and that it could not have operated as a will except by the grant of the privilege from the State at the time when Mrs. Delano died. But what would execute the power depended, in the first place, upon the deed creating it, and if that deed did not

require a will but only an instrument otherwise sufficiently characterized, it did not matter whether the instrument was also good as a will or not. *Ela* v. *Edwards*, 16 Gray, 91, 100.

What the deeds which I am considering required was "an instrument in its nature testamentary to be acknowledged by her (Mrs. Delano) as a deed in the presence of two witnesses or published by her as a will." The language was chosen carefully, I presume, in view of the incapacities of married women at that time. By the terms used a will was unnecessary. It was enough if Mrs. Delano sealed and acknowledged an instrument in its nature testamentary in the presence of two witnesses, whether it was good as a will or not. *Strong* v. *Wilkins*, 1 Barb. Ch. 9, 13; *Heath* v. *Withington*, 6 Cush. 497. This she did. In *Orr* v. *Gilman*, 183 U. S. 278, the power was created by will, and, what is more obviously material, it required a will for its execution, and so might be held to invoke and submit itself to the law in force when the execution should take place. Therefore that case has no bearing upon this. The ground upon which this tax is imposed is, I repeat, the right of the State to regulate or, if it sees fit, to destroy inheritances. If it might not have appropriated the whole it cannot appropriate any part by the law before us. And I also repeat that it has no bearing upon the matter that by a different law the State might have derived an equal revenue from these donees in the form of a tax. I do not understand it to be suggested that the State without compensation could have appropriated the remainder after Mrs. Delano's life, which Mr. Astor parted with in 1844 and shortly following years. If it could not have done so I am unable to see on what ground this tax is not void. The English decisions throw no light upon the question before us because they are concerned only with the construction of statutes which, however construed, are law.

Mr. Justice Moody concurs in this dissent.