LAURA LEWIS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 54390. Filed November 6, 1959.

*Frank Reiter, Esq.*, for the petitioner.
*Edward N. Delaney, Esq.*, for the respondent.

OPINION.

HARRON, *Judge:* The income tax liability for 1951 of the petitioner's deceased husband, Samuel Lewis, has not been paid because the assets of his estate were insufficient to meet this liability. He was, at the time of his death, an employee of the City of New York and a member of the New York City Employees' Retirement System. Upon her husband's death the petitioner was entitled to receive from the retirement system, as the duly designated beneficiary, a death benefit which consisted of payment in a lump sum of the total of all of the amounts which had been deducted from the compensation of Samuel Lewis, as a member of the retirement system, plus interest. That sum amounted to $10,020.54, including interest, at the time of the death of Samuel Lewis, and it was paid to the petitioner out of a fund of the retirement system by the comptroller of the City of New York. The payment could not be made to the estate of Samuel Lewis.

The respondent determined that the payment represented, in effect, a transfer of property from Samuel Lewis upon his death to the petitioner and that, therefore, she was a transferee of property of her deceased husband within the provisions of section 311 of the 1939 Code,[1] and is liable in respect of the unpaid income tax of Samuel Lewis. The respondent has proceeded against the petitioner because there were no assets in the estate of the decedent with which to meet his liability.

The ultimate question to be decided is whether the petitioner is liable in respect of the 1951 income tax of Samuel Lewis, deceased.

The chief contentions of the petitioner are, first, that under the rule of *Commissioner* v. *Stern*, 357 U.S. 39, the local law pertaining to the New York City Employees' Retirement System is determinative of whether there is any liability in the petitioner for the tax owed by her husband, and, second, that under section B3–50.0 of title B of chapter 3 of the Administrative Code of the City of New York,[2] both the right to and the money representing the accumulated salary deductions, with interest, which were credited to Lewis in a fund of the retirement system, of which the petitioner was the designated beneficiary in the event of his death, were exempt from execution and all process and proceedings of creditors, including the respondent. The respondent's chief argument is that there are exceptions to the provisions of section B3–50.0 so that local law does not provide the claimed exemption of rights of a member of the retirement system, or a beneficiary, and of payments made by the retirement system from claims of all creditors. The dispute, therefore, revolves about the pertinent municipal law of the City of New York.

All of the facts have been stipulated under written and oral stipulations. The facts are found as stipulated.

---

[1] SEC. 311. TRANSFERRED ASSETS.

(a) METHOD OF COLLECTION.—The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds) :

(1) TRANSFEREES.—The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this chapter.

\* \* \* \* \* \* \*

(f) DEFINITION OF "TRANSFEREE."—As used in this section, the term "transferee" includes heir, legatee, devisee, and distributee.

[2] Sec. B3–50.0 Exemption from tax, execution, etc.—The right of a person to a pension, an annuity, or a retirement allowance, to the return of contributions, the pension, annuity, or retirement allowance itself, any optional benefit, any other right accrued or accruing to any person under the provisions of this title and the moneys in the various funds provided for by this title, are hereby exempt from any state or municipal tax, and shall not be subject to execution, garnishment, attachment, or any other process whatsoever, and shall be unassignable except as in this title specifically provided.

Samuel Lewis died a resident of the State of New York on February 19, 1952, at the age of 52. He is referred to hereinafter as either the decedent or Lewis. The petitioner is his widow. She was the administratrix of his estate which was administered in the Surrogate's Court for New York County. The estate comprised gross assets having a value of $817.99, which were insufficient to pay the total amount of the funeral and administration expenses incurred. Accordingly, the estate was without funds to pay any part of the 1951 income tax liability of the decedent, there was no net estate remaining for distribution, and, accordingly, the petitioner did not receive any distribution from the estate.

On or about March 12, 1952, the petitioner, as the surviving spouse, filed an individual income tax return for the taxable year 1951 for Samuel Lewis, deceased, in which his income from his salary for 1951 was reported in the amount of $5,908.20, and his income tax was stated to be $307.57. The amount of the decedent's 1951 income tax is not in dispute. In the notice of transferee liability which the respondent issued to the petitioner, the unpaid income tax of the decedent was determined to be $315.26; plus statutory interest. That amount, which includes interest in the amount of $7.69, is not in dispute. The 1951 income tax was not paid when the decedent's return was filed, and no part thereof and no interest thereon ever has been paid.

At the time of his death and for more than 10 years prior thereto, Lewis was an employee of the City of New York and a member of the City's retirement system in city service. He was an engineer assessor in the tax department. His civil service classification was group three, for which group the minimum age for retirement was 60 years. Lewis died before reaching the retirement age.

The New York City Employees' Retirement System, hereinafter referred to as the retirement system, was established on October 1, 1920. It is administered by the Board of Estimate, hereinafter referred to as the board. The statutory provisions dealing with the retirement system are set forth in title B of chapter 3 of the Administrative Code of the City of New York. See 2 New York City Charter and Code 31, secs. B3–1.0 to and including B3–54.0.

Under section B3–14.0 of the Administrative Code, there is established one of the five component funds of the retirement system, namely, the annuity savings fund. The other four funds are the annuity reserve fund, the contingent reserve fund, the pension reserve fund, and the pension fund, with which we are not concerned.

Section B3–15.0 of the Administrative Code provides, *inter alia*, that for each member of the retirement system, the actuary of the board on the basis of certain tables shall determine the proportion

of each member's compensation (such proportion to remain constant) which shall be deducted from his compensation prior to his eligibility for service retirement and paid into the annuity savings fund. "The annuity savings fund shall be the fund in which shall be accumulated deductions from the compensation of members to provide for their annuities and their withdrawal allowances." The proportion of a member's compensation, which is to be deducted from his prospective earnable compensation prior to his eligibility for service retirement and accumulated at regular interest until his attainment of the minimum age of service retirement from his group, "shall be computed to provide at that time, an annuity equal to the pension then allowable for service as a member after the first day of October, nineteen hundred twenty." It is also provided in section B3–15.0, that the head of each agency in the government of the City of New York, shall deduct from the compensation of each member on each payroll for every payroll period the proportion of his compensation computed by the board; that every member shall be deemed to consent and agree to such deductions; and that the amounts so deducted and paid into the annuity savings fund "shall be credited, together with regular interest, to an individual account of the member from whose compensation such deduction was made." The sum of the deductions from the compensation of each member standing to his credit in his individual account in the annuity savings fund, together with interest thereon, are designated "accumulated deductions" in section B3–1.0 (Definitions) of the Administrative Code.

At the time of the death of Lewis, the total amount of the accumulated deductions from his compensation was $6,987.11, and the accumulated interest thereon was $3,033.43, so that the total sum standing to his credit in his individual account in the annuity savings fund was $10,020.54.

Under the retirement system, a member has the right "to nominate" by "written designation duly executed and filed" with the board during his lifetime the person who shall receive upon his death prior to retirement his accumulated deductions. Sec. B3–32.0, Administrative Code. A member has the right to change such beneficiary.

At some undisclosed time prior to his death, Lewis filed with the board, pursuant to section B3–32.0, a written designation duly executed in which he nominated his wife, the petitioner, as the person to receive his accumulated deductions upon his death.

On or about May 8, 1952, the comptroller of the City of New York made payment to Laura Lewis, as the nominee under the written designation, of Lewis' accumulated deductions, plus interest, in the total amount of $10,020.54.

The decedent did not nominate Laura Lewis as the beneficiary of his accumulated deductions with intent to defraud creditors. The respondent does not make any contention to that effect.

Lewis died before the date in 1952 when the filing of his income tax return for 1951 was required, and under that circumstance he did not neglect or refuse to pay his 1951 income tax when it was due in 1952, and the respondent did not make any demand upon him for payment of the tax, prior to his death, which gave rise to the attachment of a lien against any of his property in favor of the United States under section 3670, 1939 Code. Cf. *United States* v. *Bess*, 357 U.S. 51, which does not apply here.

Under section 1119(a),[3] the respondent has the burden of proving transferee liability under section 311 in respect of tax owed by a transferor. In order to discharge such burden of proof, the respondent must show that there was a gratuitous transfer of property to the transferee, and that the transfer either rendered the transferor insolvent or he was insolvent at the time of the transfer. *Arlington F. Brown*, 24 T.C. 256, 266; and *J. Warren Leach*, 21 T.C. 70.

The petitioner contends that the respondent has failed to meet this burden of proof. She contends, further, that there was no transfer of property by the decedent to her prior to or effective at the time of his death. She relies on *Flanagan* v. *O'Dwyer*, 94 N.Y.S. 2d 162, 166.[4]

On the other hand, the respondent takes the view that petitioner is a transferee within the meaning of section 311, because, he con-

---

[3] SEC. 1119. PROVISIONS OF SPECIAL APPLICATION TO TRANSFEREES.

(a) BURDEN OF PROOF.—In proceedings before the Board [Court] the burden of proof shall be upon the Commissioner to show that a petitioner is liable as the transferee of property of a taxpayer, but not to show that the taxpayer was liable for the tax.

[4] Referring to the New York City Employees' Retirement System the court said:

Benefits paid upon the employee's death prior to his retirement on pension, to beneficiaries designated by him, would not be payments to the husband, nor would they constitute his personal property. No interest whatever therein accrues to his estate. I adopt the language of the New Jersey Court in Re Koss' Estate, 106 N.J.Eq. 323, 150 A. 360, 361: "Instead of regarding the designation of the beneficiary as a disposition of property, we regard it as the mere naming of a person for whose benefit a contract is made." Both parties admit that the employee's membership in the Retirement System was a contractual relationship, the cross-claimants citing the Constitution of the State of New York, Article 5, Section 7, to that effect.

There is a distinct analogy between membership in the Retirement System, with payments to designated beneficiaries upon death of the member, and an insurance policy, on the one hand, and the exercise of a power of appointment, on the other. In Ward v. New York Life Insurance Company, 225 N.Y. 314, 122 N.E. 206, it was held that the beneficiary of an insurance policy claiming money directly from an insurance company does not claim "from, through or under" the insured in said policy, "even though the latter has made the designation." The court said: "Nevertheless with very limited exceptions it has been held that the title of a grantee under a power of appointment comes from the donor of the power rather than from one who exercises it (Chanler v. Kelsey, 205 U.S. 466, 474, 27 S.Ct. 550, 51 L.Ed. 882), and principles similar to those applied in the case of powers, we think, lead to the conclusion that beneficiaries like the respondents secure their money from the insurance company and not from the insured who designated them." 225 N.Y. at page 319, 122 N.E. at page 208.

tends, at the moment of the death of Samuel Lewis there was a transfer from him to petitioner of property having a value of $10,-020.54, and that Lewis was either insolvent at the time of his death or was rendered insolvent by the alleged transfer.

It is unnecessary to decide whether the petitioner was a transferee within the meaning of section 311 because, applying the rule of *Commissioner* v. *Stern, supra*, to this case, the municipal law of the City of New York, contained in title B of chapter 3 of the Administrative Code of the City of New York, governs the question of petitioner's liability to the United States for the unpaid income tax of her deceased husband, and it is our conclusion that under section B3–50.0 of the Administrative Code no liability of the petitioner exists to any creditor, including the respondent.

The respondent does not seriously argue that the basic reasoning of the *Stern* case does not apply here, namely, that section 311 "neither creates nor defines a substantive liability but provides merely a new procedure by which the Government may collect taxes"; that the existence and extent of liability of a transferee of property of a taxpayer, in respect of income tax imposed upon the taxpayer, under section 311 should be determined by State or local law; and that the Government's substantive rights in this case are precisely those which other creditors would have under the municipal law of the City of New York. If there remains any doubt in this respect, we must conclude that the primary principles of the *Stern* case apply to the facts and circumstances of this case. Therefore, the question to be decided narrows down to whether under local law, the pertinent municipal law of the City of New York, the petitioner is or is not liable to her husband's creditors, including the respondent.

Section B3–50.0 of the Administrative Code, upon which the petitioner relies, contains a statutory exemption from the claims and process of creditors. The language of that statutory provision is clear, unambiguous, and sweeping. It exempts from "execution, garnishment, attachment, or any process whatsoever" both *the right* of a person to the return of contributions to a fund of the retirement system and *"any other right accrued* or accruing *to any person* under the provisions of this title *and the moneys in the various funds* provided for by this title." (Emphasis supplied.)

It follows from the authorities cited, and others, that the monies payable to beneficiaries by the Retirement System, in the instant case, never belonged to the deceased employee in his lifetime and in fact did not come into existence until his death. At the time of payment over to the Treasurer of the City of New York under the order of interpleader, they were the property of the System. These monies therefore were not personal property of the husband, * * *

The petitioner had a right to receive the accumulated deductions of her deceased husband which stood credited to him in the annuity savings fund of the retirement system, plus interest, under the written designation of Lewis which nominated, or named, her as the beneficiary thereof in the event of his death prior to his retirement. Under the clear provisions of section B3–50.0 both petitioner's right to receive the payment from the City of New York and the money itself was exempt from the claims of and any process by creditors to reach the money. This construction of the statutory provision is well established as is shown by the following:

In *Fox* v. *Fox*, 168 N.Y.S. 2d 815, it is stated that, "By statutory enactment such contributions are not subject to execution, garnishment, attachment or other process (§ B3–50.0, Administrative Code of the City of New York)."

In *Negin* v. *Salomon*, 151 F. 2d 112, 113, 114, the court, referring to the retirement system, stated:

There can be no doubt that the bankrupt's interest in the fund was exempt from his creditors under the laws of New York. Subdivision 7 of section 200 of the New York Insurance Law, Consol. Laws c. 28, and section B3–50.0 of the Administrative Code of New York City, establish the exemption, and subdivision (1) of section 166 of the New York Insurance Law extends it not only to the bankrupt, but to any "beneficiary."

    \*    \*    \*    \*    \*    \*    \*

There is equally little substance in the plaintiff's argument that, because the bankrupt retained power to change his wife as beneficiary, the fund had ceased to be exempt.

In *Feeley* v. *O'Kelly*, 113(2) N.Y.L.J. 25, col. 6M (1/3/45), the City Court stated in denying a judgment creditor's motion:

Chapter 3, Title B, subdivision B3–50.0 of the Administrative Code of the City of New York specifically exempts "from execution, garnishment or attachment, or any process whatever," the "right \* \* \* to the return of contributions," paid into the New York City Retirement System by a city employee.

See, also, *Sheffield Farms Co.* v. *Gallagher*, 105(15) N.Y.L.J. 288, col. 7M (1/18/41), and *McDonald* v. *Brosnan*, 106(86) N.Y.L.J. 997, col. 3F (10/10/41), where the City Court (New York County) denied motions of judgment creditors on the ground that a pension from the retirement system is exempted by section B3–50.0 and "may not be appropriated by indirection," and "may not be reached by direction for payment of the judgment in installments."

The respondent relies upon cases holding that the exemption provided by section B3–50.0 does not apply to a sequestration proceeding brought by a divorced wife of an employee of the City of New York, or a wife who has become legally separated from her husband. Those cases hold that a wife is entitled to receive from the retirement system, to enforce payment of alimony decreed by a court,

payments of part of the former husband's (or husband's) pension allowances, and from such holdings he argues that since the claim of a wife for alimony may be satisfied by sequestration of her husband's pension payments pursuant to section 1171 of the New York Civil Practice Act, section B3–50.0 of the Administrative Code does not completely exempt payments from the retirement system from the claims and process of all creditors. The respondent cites *Zwingmann* v. *Zwingmann*, 150 App. Div. 358, 134 N.Y.S. 1077; *Monck* v. *Monck*, 184 App. Div. 358, 134 N.Y.S. 1077; *Weigold* v. *Weigold*, 236 App. Div. 126, 258 N.Y.S. 350; *Fisher* v. *Fisher*, 133 N.Y.S. 2d 49; and *Fox* v. *Fox*, 168 N.Y.S. 2d 815.

All of the cited cases have been considered but it is concluded that they are not relevant and do not represent a construction which is an exception or *contra* to the view that an interest in the retirement system fund is exempt from the claims and processes of all creditors.

In all of the cited cases, the claim of a wife to share in her husband's pension was sustained under the common law rule that the union of spouses makes a wife "part of himself," and the holding that the exemption of the funds of a retirement system from the claims of creditors was not intended by the legislature "to deprive the wife of her legal and moral right to the support of her husband." *Zwingmann* v. *Zwingmann*, *supra*. In *Monck* v. *Monck*, *supra*, the court stated that the above view was "in harmony with the decisions of many other states construing statutory exemptions from levy and execution as not applying to proceedings to enforce alimony for the wife's support. See 50 L.R.A. (N.S.) 697, note." Also, in the *Monck* case, where a statute exempting the pension of a retired policeman was involved, the court held that under that statute (which corresponds to section B3–50.0) the costs incurred in the sequestration proceeding, however, could not be paid out of pension payments, the pension payments being exempt from levy and execution, since "the payment of these costs are not a provision for support and maintenance but a debt to be collected by execution, and hence the [exemption] provision of the charter applies." In *Zwingmann* v. *Zwingmann*, *supra*, referring to an exemption statute the court stated:

The whole purpose of the [exempting] statute is served when the fund is preserved *for the use of the pensioner and those legally dependent upon him for support and maintenance;* when it is held intact for the care of the woman who is, in law, but a part of himself, and entitled, * * * to share in the pension. [Emphasis supplied.]

In all of the cases cited by the respondent, the procedure resorted to by a former wife, or wife, was that provided by section 1171 of

the Civil Practice Act which is to provide security for payments by a husband in an action for divorce, separation, or annulment. Section 1171 is part of article 70 of the Civil Practice Act which deals with matrimonial actions. In *Flanagan* v. *O'Dwyer, supra,* at 165, the following explanation of section 1171 is given:

Section 1171 of the Civil Practice Act provides for the enforcement of the payment of alimony, and specifically only, for the husband giving reasonable security for such payment, and in default of giving security or making payment, for the sequestration, and the appointment of a receiver, of his personal property and the rents and profits of his real property. * * *

The only authorities cited by the respondent in support of his determination that petitioner is liable, as a beneficiary under the retirement system, for the decedent's tax are those noted above. They are inapposite.

The respondent, in relying upon the cited cases, has failed to recognize that the claim of a wife against her husband for maintenance and support is founded in the husband's moral and legal obligation to support his wife and not in a debtor-creditor relationship. The exemption from the claims of creditors contained in section B3–50.0 of the Administrative Code relate to the debtor-creditor relationship as it is usually understood and does not curtail a wife's right to support and maintenance for which, it has been held, the provisions of section B3–50.0 were intended to provide protection just as much as they were intended to secure for the employee his maintenance and support so as to prevent him from becoming a public charge.

The respondent's contention that the petitioner (as the beneficiary of her deceased husband's accumulated contributions to the annuity savings fund of the retirement system) is under the applicable local law liable to the United States as a creditor of Lewis for his unpaid income tax is without legal support.

It is held that petitioner is not liable to the respondent for her deceased husband's unpaid income tax because the municipal law of the City of New York imposes no liability against her in favor of other creditors, in general, of Samuel Lewis. *Commissioner* v. *Stern, supra.*

*Decision will be entered for the petitioner.*