KATHERINE B. ALBRECHT AND ELIZABETH L. BEBB, EXECUTRICES OF THE ESTATE OF RICHARD E. BEBB, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 41295. Promulgated April 6, 1933.

*Robert B. Arbaugh, Esq.,* for the petitioners.
*L. S. Pendleton, Esq.,* for the respondent.

OPINION.

SMITH: The first question for decision is whether the value of the Elizabeth L. Bebb Trust in the amount of $344,375 was includable in the gross estate of the decedent. The correctness of the determination of the value of the corpus of the trust fund is not challenged.

Section 302 of the Revenue Act of 1924 provides in part as follows:

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

\*     \*     \*     \*     \*     \*     \*

(d) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for a fair consideration in money or money's worth.

If the Elizabeth L. Bebb Trust was a revocable trust within the meaning of the statute, the petitioners do not question the right of the respondent to include in the gross estate the value of the corpus of the trust in accordance with *Saltonstall* v. *Saltonstall*, 276 U. S. 260; *Chase National Bank* v. *United States*, 278 U. S. 327; *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339; *Porter* v. *Commissioner*, 60 Fed. (2d) 673. Referring to *Reinecke* v. *Northern Trust Co.*, *supra*, the petitioners submit that that and kindred cases do not touch the identical point here involved, and state:

* * * So far as we can ascertain, in each of those cases there was a so-called unlimited power of revocation exercisable in each instance by the grantor at such time as he felt so disposed.

We agree with the decision of the Court on trusts of that character. However, we wish to point out that in this appeal there is a very different revocation provision, the distinguishable feature being that when the year 1926 was once commenced, the trust to all intents and purposes became irrevocable for that year, and when the decedent died on January 5, 1926, he was without any power of revocation. We direct particular attention to the provisions of the statute which, as quoted above, state in substance that a transfer in trust shall become a part of the gross estate.

" Where the enjoyment thereof was subject *at the date of his death* to any change through the exercise of a power either by the decedent alone or in conjunction with any person, to alter, amend or revoke."

We are of the opinion that the " distinguishable feature " of the Elizabeth L. Bebb Trust, pointed out above, does not distinguish this case from that of *Reinecke* v. *Northern Trust Co.*, *supra*. In *Chase National Bank* v. *United States*, *supra*, the court said:

* * * we think the power to tax the privilege of transfer at death cannot be controlled by the mere choice of the formalities which may attend the donor's bestowal of benefits on another at death, or of the particular methods by which his purpose is effected, so long as he retains control over those benefits with power to direct their future enjoyment until his death. Termination of the power of control at the time of death inures to the benefit of him who owns the property subject to the power and thus brings about, at death, the completion of that shifting of the economic benefits of property which is the real subject of the tax, just as effectively as would its exercise, which latter may be subjected to a privilege tax, *Chandler* v. *Kelsey*, 205 U. S. 466. * * *

The decedent had the power under the trust instrument to give notice of its revocation in December of 1924, or December of any

subsequent year, the revocation to be effective on January 1 succeeding. Had the decedent lived throughout the year 1926 and into 1927, he could have revoked the trust in December of 1926, and such revocation would have been effective January 1, 1927. It was his death in 1926 which cut off this power of revocation. This constituted a shifting of economic benefits with respect to the trust fund and in our opinion constituted a transfer at death which was the appropriate subject of the estate tax.

The petitioners call attention, in support of their contentions, to *Lewis* v. *White*, 56 Fed. (2d) 390; affd., *White* v. *Lewis*, 61 Fed. (2d) 1046; *Langley* v. *Commissioner*, 61 Fed. (2d) 796; *Mabel A. Ashforth et al., Executors*, 26 B. T. A. 1188. These decisions are concerned with the interpretation of section 219 (g) of the Revenue Act of 1926, and with section 166 of the Revenue Act of 1928. They have no application to provisions of the estate tax laws. The action of the Commissioner in including in the gross estate the value of the corpus of the Elizabeth Bebb Trust is sustained.

The second question in issue is whether the respondent properly included in the gross estate 1,954 shares of Central Steel Company common stock, which was later exchanged for 4,152 common shares of Central Alloy Steel Corporation stock and $4,288 cash. The contention of the petitioners upon this point is that this property was held by the decedent in trust and did not constitute a part of the decedent's gross estate. The evidence of record, however, fails to disclose that the decedent held his property in trust.

The testimony is to the effect that, in 1923, $550,000 was turned over to the decedent by the Cleveland-Cliffs Iron Company; that the decedent paid $40,000 of this sum to Clarence G. Herbruck for counsel fees, and thereafter turned over one-third of the balance, $170,000, to one Stuart, and a like amount to one Griffiths; that the sum so paid to Bebb was to be available for payment of services of Bebb, Griffiths, and Stuart to be rendered in connection with the planning for and construction of a proposed blast furnace, it being expected that the furnace would be constructed and operated under their direction and supervision. It was then assumed that the Central Steel Company would promptly go forward to construct and place in operation its blast furnace with by-product ovens involving large additional services and responsibilities of these three officers, and it was anticipated that they might become entitled to considerable additional compensation. Bebb, Griffiths, and Stuart did not perform the extraordinary services contemplated, such services having been hired from the outside. The demand was then made upon

the estate of Bebb and upon Griffiths and Stuart for the return to the Cleveland-Cliffs Iron Company of $170,000 from each plus 2 per cent interest. Griffiths and Stuart admitted the validity of the claim and made settlement with the Cleveland-Cliffs Iron Company. The executrices of the decedent had distributed a large portion of the estate and in settlement of the claim made by the Cleveland-Cliffs-Iron Company offered to turn over to it 4,152 shares of Central Alloy Steel Corporation stock and $4,288 in cash. The stock then had a value of $31 per share and the payment of the stock and cash, of a value of $133,000, was made by the estate in settlement of the claim made against it. It was admitted by witnesses for the petitioners that the 1,954 shares of Central Steel Company stock, later exchanged for 4,152 shares of Central Alloy Steel Corporation stock, were not held in trust by the decedent at the date of his death and that the cash was not held in trust. We think, therefore, that there is no merit in the contention of the petitioners that the 1,954 shares of Central Steel Company stock, and cash to the extent of $4,288, were held by Bebb in trust and therefore should be excluded from the gross estate.

As an alternative contention the petitioners claim the right to deduct from the gross estate $133,000 as a claim against the estate. The evidence goes to show that the claim was a valid one against the estate. Under the statute it was a legal deduction from the gross estate in the determination of the net estate.

The last point in issue relates to a credit against the Federal estate tax under section 301 (b) of the Revenue Act of 1924 of legacy or succession taxes paid to the States of Ohio, New York, and New Jersey, and to the Commonwealth of Pennsylvania in the amount of $4,345.74. In answer to the amended petition the respondent:

* * * Admits so much of paragraph 5 (m) of the amended petition as alleges that on the 24th day of September, 1926, the petitioners paid to the Treasurer of Stark County, Ohio, as inheritance tax upon the estate of said decedent, the sum of $4,126.16. Denies all other allegations contained in said paragraph 5 (m) of the amended petition.

The evidence shows the payment of inheritance taxes to the States of New York and New Jersey in February and March of 1927 of $120 and $59.84, respectively, and to the Commonwealth of Pennsylvania on March 8, 1927, of $31.78. The total inheritance taxes paid were $4,345.74. They are a proper credit against the Federal estate tax within the limits of section 301 (b) of the Revenue Act of 1924.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*