MAX R. BARDACH, PETITIONER, *v.* COMMISSIOER OF INTERNAL REVENUE, RESPONDENT.

LEONARD M. SHAPOFF, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 64617, 64618.   Promulgated April 30, 1935.

*James B. O'Donnell, Esq.*, for the petitioners.
*Philip M. Clark, Esq.*, and *S. B. Pierson, Esq.*, for the respondent.

OPINION.

SEAWELL: These proceedings were consolidated for hearing and report and involve the redetermination of deficiencies in income tax for 1929 in the amount of $9,985.97 in the case of petitioner Bardach and $10,463.40 in the case of petitioner Shapoff. In the taxable year the wives of the petitioners reported as taxable to them dividends paid on and profit realized from the sale of shares of stock of the Leonard Custom Tailors Co., an Ohio corporation. In his audit of the returns the respondent determined that the sums represented taxable income of the petitioners and, accordingly, increased the taxable income of each petitioner by the amount of dividends and

profit reported by his wife. Such action the petitioners claim to be erroneous. The answer to the issue depends upon whether the petitioners made gifts of the stock to their wives.

The Leonard Custom Tailors Co., hereinafter referred to as the corporation, was organized in 1923 with a capital stock of $250,000, consisting of 2,500 shares, each of the par value of $100, to take over a business then being operated by the petitioners as partners under the name of Leonard Custom Tailors. Petitioner Shapoff was elected president, and petitioner Bardach treasurer, of the corporation. Both still serve in the same capacities and since 1929 Bardach has also been secretary of the corporation. They, and E. Shapoff, wife of Leonard M. Shapoff, have been members of the board of directors of the corporation since its organization.

In July 1925, pursuant to authority of its board of directors, the corporation opened two accounts in its books, one entitled " L. M. Shapoff and Mrs. L. M. Shapoff " and the other " Max Bardach and Mrs. M. Bardach." Thereafter dividends paid on stock of the corporation outstanding in the names of the petitioners and their wives were credited to the accounts and certain charges were entered in the respective accounts at their request.

In 1924 and 1925 the corporation issued stock to the petitioners as follows:

|  | Shapoff | | Bardach | |
| --- | --- | --- | --- | --- |
|  | Certificate No. | Shares | Certificate No. | Shares |
| February 15, 1924 | 1 | 356 | 4 | 358 |
| Do | 2 | 1 | | |
| July 31, 1924 | 10 | 39 | 11 | 39 |
| July 31, 1925 | 16 | 80 | 17 | 49 |
| Do | | | 18 | 30 |
|  | | 476 | | 476 |

On February 15, 1924, one share of stock, evidenced by certificate No. 3, was issued to E. Shapoff. Certificates Nos. 1 to 4, inclusive, were issued for the assets of the Leonard Custom Tailors. The remaining certificates were acquired by the petitioners by subscription.

On March 1, 1926, 475 shares, represented by certificates Nos. 1, 10, and 16, of the 476 shares held by Shapoff were reissued in favor of E. Shapoff by certificate No. 24, and certificates Nos. 4, 11, and 17, held by Bardach, for 446 shares were reissued, 445 shares, evidenced by certificate No. 25, in favor of Rose Bardach, wife of petitioner Bardach, and one share, evidenced by certificate No. 26, in favor of Bardach. Certificate No. 18 was assigned by Bardach to Shapoff and on January 1, 1926, it was reissued in favor of E. Shapoff by

certificate No. 23. These changes of record stock ownership are reflected in the following tabulation, showing the shares outstanding on March 1, 1926, in the name of each party:

|  | Certificate No. | Shares |
|---|---|---|
| L. M. Shapoff | 2 | 1 |
| E. Shapoff | 3, 23, and 24 | 506 |
| Max R. Bardach | 26 | 1 |
| Rose Bardach | 25 | 445 |

Thereafter, on June 30, 1926, and June 29, 1927, certificates Nos. 35 and 37, for 150 and 50 shares, respectively, were issued in favor of E. Shapoff, giving her record holdings of 706 shares. On the same dates certificates Nos. 36 and 38, for 130 and 40 shares, respectively, were issued in favor of Rose Bardach, making her record holdings of stock as of June 29, 1927, 615 shares. In each case the stock issued was charged to the allotments of stock made to the petitioners at the time the coropration was organized. The par value of the stock issued to E. Shapoff was charged to the joint account maintained by the corporation in the name of L. M. Shapoff and Mrs. L. M. Shapoff, and the stock issued in favor of Rose Bardach was charged to the joint account of Max Bardach and Mrs. M. Bardach.

There were no changes in the record stockholdings of the petitioners and their wives from June 29, 1927, to August 2, 1929, except for the reissuance on July 2, 1928, to each petitioner's wife of a single certificate, No. 47 in the case of Rose Bardach and No. 49 in the case of E. Shapoff, for the certificates theretofore issued to them.

On August 2, 1929, Shapoff acquired 46 additional shares by subscription. On the same day certificates Nos. 47 and 49 were reissued, Bardach and his wife receiving certificates for 350 and 265 shares, respectively, for certificate No. 47, and Shapoff and his wife receiving certificates for 360 and 346 shares, respectively, for certificate No. 49.

Dividends paid by the corporation in 1926, 1927, and 1929 were computed by it on the basis of the record holdings of the petitioners and their wives. In each case the amount was credited to the joint accounts on the corporate books, a separate entry being made for the amount paid on the stock outstanding in the name of each of the respective stockholders of record.

On September 4, 1929, the capital stock of the corporation was increased to 50,000 shares of no par value. It was stipulated that 18.4 shares of no par value stock were issued to the record stockholders for each share of old stock outstanding in their names on August 2, 1929. A portion of the new stock issued in the names of

the petitioners and their wives was thereafter sold. On September 10, 1929, the broker to or through whom it was sold issued and delivered to the petitioners and their wives separate checks for the selling price of the stock outstanding in their names. The check issued to Rose Bardach was deposited to the credit of her husband's individual checking account.

It is well established that the requirements of a gift *inter vivos* are (1) an intention on the part of a competent donor to give; (2) an acceptance by a competent donee; and (3) a transfer of title with complete relinquishment by the donor of dominion and control of the property. *Allen-West Commission Co.* v. *Grumbles*, 129 Fed. 287; *Edson* v. *Lucas*, 40 Fed. (2d) 398; *J. D. Varnell*, 28 B. T. A. 231. Cf. *Adolph Weil*, 31 B. T. A. 899.

The testimony in the record relating to the circumstances surrounding the alleged gifts is confined to that given by the petitioners—interested parties. No reason was assigned for not offering testimony of the alleged donees. Shapoff testified that he made a gift of certificate No. 23 for 30 shares to his wife about January 15, 1926, and certificate No. 24 (reissue of Nos. 1, 10, and 16) for 475 shares in March 1926; that he discussed the transfers with his wife; that she was aware that the transfers had been made; and that "I thought it [the transfer of the 475 shares] would be a good idea for protection of herself and the children that she should own that certain amount of shares of stock in the company." There is no proof in the record that any of the various certificates issued in favor of E. Shapoff were ever actually or constructively delivered to her with an intention to transfer ownership thereof. Certificate No. 3 for one share and certificate No. 35 for 150 shares were not placed in evidence and their whereabouts was not explained. Certificates Nos. 23, 24, and 37 bear undated blank endorsements.

Bardach testified that he " gave " certificate No. 25 for 445 shares to his wife about March 1, 1926, " for the protection of herself and children ", and that for " sometime " after the physical delivery of it to her, she " kept it at home with some of her private papers." Certificates Nos. 25 and 36 were on March 24, 1927, endorsed by Rose Bardach to her husband, and nothing of record is contrary to the fact that he had possession of them at all times thereafter. Certificate No. 38 for 40 shares bears an undated blank endorsement of Rose Bardach and there is nothing of evidence to show who held it after such endorsement. For aught we know it was endorsed and delivered to Bardach promptly upon its issuance for the purpose of conveying title thereto.

There is much in the record to discredit the testimony of the petitioners and show the ingenuousness of the various stock issues and

alleged gifts in question. Shapoff testified that checks for dividends paid for the stock outstanding in his wife's name were deposited by her in their joint checking account and Bardach testified that many of the dividends declared on the stock issued in favor of his wife were credited to their joint account in the corporation's books, and that when a check was issued for dividends he would " ordinarily " show it to his wife, who would permit him to deposit it in his individual bank account. The documentary evidence of record establishes that all dividends declared after 1924 were paid by credits to the joint accounts. Nothing other than the testimony of Shapoff shows how the 1924 dividend was paid.

In 1923 the board of directors of the corporation adopted a resolution for the payment of salary bonuses to certain of its officers, including petitioners, equal to 12 percent of the stock owned by them as shown by the books of the corporation. Such bonuses were paid in 1926, 1927, and 1928, Shapoff receiving each year around $14,000, and Bardach $12,500. The amounts paid to the petitioners bear no relation to their record holdings of stock. For instance, in 1927 and 1928 when each petitioner held one share of stock according to the corporate books, Shapoff received a bonus of $14,290 and Bardach $12,530. We think this is strong evidence of the fact that the petitioners, who, as members of the corporation's board of directors, voted for the plan and the payments, never considered their small stockholdings as representative of their true interest in the corporation. Shapoff's wife was present at most of the meetings of the directors at which the bonuses were authorized and the stockholders' meetings at which the action of the directors was ratified, but did not, so far as the minutes of the meetings show, register any protest. Rose Bardach attended the 1926 meeting of the corporation's stockholders and, as a stockholder, ratified the action of the directors in authorizing a bonus for that year. She did not attend any other meeting of the stockholders. Shapoff testified on cross-examination that he had only a faint recollection of the bonus arrangment.

The petitioners received salaries from the corporation in addition to the bonuses paid to them. The salary of Shapoff was increased yearly from $115 per week in 1923 to $600 per week in 1929. The weekly salary of Bardach was $115 in 1923 and by 1928 it had been increased to $300 per week.

No receipts were given the corporation in the space provided therefor in the stock book for any of the certificates issued to the wives of the petitioners except certificates Nos. 3, 47, and 49. The receipts for certificates Nos. 3 and 49 were signed " E. Shapoff per L. M. Shapoff " and the receipt for certificate No. 47 was signed

"Mrs. Rose Bardach by Max R. Bardach." This is significant in view of the fact that personal receipts were obtained from the persons to whom all other certificates were issued, except certificates issued on August 2, 1929, for which no receipts were given.

Some of the stock certificates were not placed in evidence and no explanation was made for failure to do so. Many of the certificates that were made of record are badly mutilated. The record does not disclose the circumstances surrounding the reissuance on August 2, 1929, of certificates Nos. 47 and 49.

Considering all of the evidence, we are of the opinion, and so hold, that the petitioners have failed to prove gifts of the stock in question to their respective wives. The action of the respondent in holding the petitioners to be liable for tax on the dividends paid on the stock in 1929 and the profit realized from the sale of a portion thereof in the same year is sustained.

Reviewed by the Board.

*Decision will be entered for the respondent in each proceeding.*