FIDELITY-PHILADELPHIA TRUST COMPANY, TRUSTEE, ESTATE OF REBECCA K. MOON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 75320. Promulgated May 27, 1936.

*Simon Fleishman, Esq.*, for the petitioner.
*Lewis S. Pendleton, Esq.*, for the respondent.

OPINION.

ARNOLD: This proceeding is for the redetermination of a deficiency in estate tax in the amount of $221.53. The sole issue is whether or not respondent erred in including in the gross estate the value of certain property transferred in trust by decedent under the facts and circumstances herein below indicated.

Petitioner is the successor trustee under a certain trust agreement dated April 29, 1885, between Rebecca K. Miller (afterwards Rebecca K. Moon), party of the first part, James Thomas Moon, party of the second part, and the Fidelity Insurance Trust & Safe Deposit Co., Philadelphia, Pennsylvania, predecessor of petitioner, party of the third part. The instrument was executed in contemplation of the approaching marriage of the parties of the first and second parts.

By the said instrument, Rebecca K. Moon, the decedent, transferred property having a value at the date of her death of $22,152.49, to the above named trustee, with instructions to pay the net income therefrom to the settlor for life and subject to the following additional provisions:

IN TRUST further at and after the death of the said party of the first part to pay over, deliver, assign and convey the principal of the trust estate hereby conveyed to such person or persons and for such uses and purposes as the said party of the first part shall, by her last will and testament made at least thirty days before her death, have designated and appointed. And IN TRUST further if the said party of the first part shall die without making any will as aforesaid then to assign and transfer the said trust estate and securities to such person or persons as under the Intestate Laws of the state of Pennsylvania shall be entitled to succeed to and inherit the said trust estate.

The decedent died on December 23, 1931, and, by reason of the fact that she had failed to execute her will at least 30 days prior to her death, those persons entitled to succeed to and inherit said trust estate under the intestate laws of Pennsylvania took the principal of the fund as provided in the trust agreement.

In determining the deficiency respondent included the value of the entire corpus or principal of the trust as a part of the decedent's gross estate.

The statute applicable here is the Revenue Act of 1926, the material parts of which are set out in the margin.[1] Under the original provisions of the 1926 Act, in order for the corpus of a trust to be taxable as a part of the decedent's gross estate, it must appear (1) that the transfer was made in contemplation of death, or (2) was intended to take effect in possession or enjoyment at or after the decedent's death, or (3) that the enjoyment thereof was subject *at the date of death* to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or (4) that the decedent relinquished any such power in contemplation of death. By the amendment of March 3, 1931,[2] the statute was expanded to embrace a transfer under which the transferor retained for his life the possession or enjoyment of or income from the property, or the right to designate the persons who should possess or enjoy the property.

It is not contended in the present case that decedent transferred her property to the trustee in contemplation of death, and the facts would plainly refute such a conclusion. Nor did the decedent relinquish any power to alter, amend, or revoke, in contemplation of death. Hence, the property involved here is not taxable under

---

[1] Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

(a) To the extent of the interest therein of the decedent at the time of his death;

   \*      \*      \*      \*      \*      \*

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. \* \* \*

(d) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in the case of a bona fide sale for an adequate and full consideration of money or money's worth.

[2] By Joint Resolution approved March 3, 1931, the first sentence of subdivision (c) of section 302 above was amended to read as follows:

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of, or intended to take effect in possession or enjoyment at or after his death, including a transfer under which the transferor has retained for his life or any period not ending before his death (1) the possession or enjoyment of, or the income from the property or (2) the right to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth."

those provisions of the statute. Also, the fact that decedent reserved the income from the property for her life does not render the corpus taxable, under the original provisions of the statute. *May* v. *Heiner*, 281 U. S. 238; *Burnet* v. *Northern Trust Co.*, 41 Fed. (2d) 732; affd. (per curiam on authority of *May* v. *Heiner*), 283 U. S. 782. The trust deed, admittedly irrevocable, was executed by decedent prior to the Joint Resolution of March 3, 1931, and, while that amendment taxes transfers under which the transferor retained the income for life, it may not be construed as applying to transfers made in good faith and without contemplation of death prior to its enactment. *Nichols* v. *Coolidge*, 274 U. S. 531.

It follows that the corpus of the trust here in question can be included in the decedent's gross estate, if at all, only because of the retained power of appointment.

Petitioner contends that the trust estate was not subject to any change, at the death of the decedent, through the exercise of a power by reason of the fact that, decedent having failed to make a will at least 30 days prior to her death, no right to appoint remained in her at the date of her death, and, the attempted exercise of power being ineffective, the trust property should not be included in the gross estate of the decedent. Citing *Grinnell* v. *Commissioner*, 70 Fed. (2d) 705; affd., *Helvering* v. *Grinnell*, 294 U. S. 153.

The *Grinnell* case, which is distinguishable from the case before us, arose under section 302(f)(1) of the Revenue Act of 1926. The decedent died in 1927, before the amendment of March 3, 1931, to subdivision (c) of section 302, and the question there was whether the property passed under the exercise by decedent of the power of appointment, or under the will of decedent's father. In its opinion the Supreme Court said:

The tax here does not fall upon the mere shifting of the economic benefits in property, but upon the shifting of those benefits by a particular method, namely, by their *"passing* under a general power of appointment," and not otherwise.

In the instant case there was no question as to whether the property passed under an exercise of the power of appointment, the decedent having failed to exercise the power within 30 days of her death. The question is whether under these facts the trust property should be included in her gross estate.

In *Katherine B. Albrecht et al., Executrices*, 27 B. T. A. 1091, the decedent had created a trust in favor of his wife. The trust was irrevocable during 1924 and each calendar year thereafter, "unless between the 1st and 31st days of December in 1924, or any subsequent year the same shall by the trustor, by written notice to the trustee, be revoked, such revocation to be effective on or after the 1st day of January next succeeding * * *; but whenever any calendar year

shall have commenced without any such notice of revocation, alteration or modification having been given as aforesaid, this trust and all its terms and provisions shall continue irrevocably in force throughout the calendar year so commenced." The trustor died January 5, 1926, without having served any notice of revocation according to the provisions of the trust instrument. It was there contended that when the decedent died in 1926, he was without any power of revocation. In holding that the value of the corpus should be included in the gross estate of the decedent the Board quoted the language of the Supreme Court in *Chase National Bank* v. *United States*, 278 U. S. 327, as follows:

* * * we think the power to tax the privilege of transfer at death cannot be controlled by the mere choice of the formalities which may attend the donor's bestowal of benefits on another at death, or of the particular methods by which his purpose is effected, so long as he retains control over those benefits with power to direct their future enjoyment until his death. Termination of the power of control at the time of death inures to the benefit of him who owns the property subject to the power and thus brings about, at death, the completion of that shifting of the economic benefits of property which is the real subject of the tax, just as effectively as would its exercise, which latter may be subjected to a privilege tax, *Chandler* v. *Kelsey*, 205 U. S. 466. * * *

The Board further said:

Had the decedent lived throughout the year 1926 and into 1927, he could have revoked the trust in December of 1926, and such revocation would have been effective January 1, 1927. It was his death in 1926 which cut off this power of revocation. This constituted a shifting of economic benefits with respect to the trust fund and in our opinion constituted a transfer at death which was the appropriate subject of the estate tax.

In *H. T. Cook et al., Executors*, 23 B. T. A. 335; affd., *Cook* v. *Commissioner*, 66 Fed. (2d) 995; certiorari denied, 291 U. S. 660, we held that where the settlor of a trust reserves to himself alone the power to change the ultimate beneficiaries of the trust, such reservation constitutes a power to alter or amend and renders the transfer incomplete until his death, and the trust property should be included in his gross estate.

In *Saltonstall* v. *Saltonstall*, 276 U. S. 260, the Supreme Court said:

So long as the privilege of succession has not been fully exercised it may be reached by the tax. * * * And in determining whether it has been so exercised technical distinctions between vested remainders and other interests are of little avail, for the shifting of the economic benefits and burdens of property, which is the subject of a succession tax, may even in the case of a vested remainder be restricted or suspended by other legal devices.

In *Porter* v. *Commissioner*, 288 U. S. 436, the Supreme Court said:

The power did not amount to an estate or interest in the property. It was much like, and for the purposes of this case may be deemed the substantial

equivalent of, a general power of appointment by will. * * * But the reservation here may not be ignored for, while subject to the specific limitation, it made the settlor dominant in respect of other dispositions of both corpus and income. His death terminated that control, ended the possibility of any change by him, and was, in respect of title to the property in question, the source of valuable assurance passing from the dead to the living. That is the event on which Congress based the inclusion of property so transferred in the gross estate as a step in the calculation to ascertain the amount of what in section 301 (26 USCA §§ 1092–1093) is called the net estate. Thus was reached what it reasonably might deem a substitute for testamentary disposition. *United States* v. *Wells*, 283 U. S. 102, 116.

We think the facts of this case bring it within the provision of section 302 of the Revenue Act of 1926 (as amended March 3, 1927) and that the reservation of a power to pass the property by will made the entire transaction subject to the estate tax. It appears the decedent made a will within 30 days preceding her death. But for her death within 30 days after the making of the will, the succession to the property would have been changed. Her death, then, was the motivating force that controlled the final disposition of the property. Decedent's failure to pass the property by will resulted in fact in a disposition to her heirs; *Katherine B. Albrecht et al., supra.* The contention of the petitioner, while somewhat ingenious is, we think, factually unsound. As a condition precedent to a valid will the trust instrument provided that it should be made at least 30 days before the decedent's death, but it was her death that cut off her power to pass the property by will.

*Decision will be entered for the respondent.*