## HESSLEIN v. HOEY.

District Court, S. D. New York.

Jan. 25, 1937.

White & Case, of New York City (Walter S. Orr and Josiah Willard, both of New York City, of counsel), for plaintiff.

Lamar Hardy, U. S. Atty., of New York City (Irvin C. Rutter, Asst. U. S. Atty., of New York City, of counsel), for defendant.

GODDARD, District Judge.

This is a motion to dismiss the complaint herein on the ground, that it does not set forth facts sufficient to constitute a cause of action. The action is one against the collector of internal revenue for the Second district of New York to recover the amount of a gift tax for 1934 alleged to have been illegally collected.

It appears from the complaint, and the trust indenture, and claim for refund, made a part of the complaint, that the plaintiff, Edgar J. Hesslein, on December 20, 1934, transferred to three individuals in trust 2,000 shares of preferred stock of Neuss-Hesslein & Co., Inc., of the value of $290,000; that subsequently the plaintiff filed with the defendant on March 15, 1935, a federal gift tax return for the calendar year 1934 showing no tax due. The Commissioner of Internal Revenue later determined that the transfer in trust was taxable under the Gift Tax Act of 1932 in the amount of $11,154.95, and on or about May 6, 1936, the plaintiff paid such tax plus interest of $764.12. On May 13, 1936, plaintiff filed a claim for refund on this amount, which claim was rejected by the Commissioner on or about June 17, 1936. The plaintiff thereafter, on or about July 1, 1936, brought this action to recover the amount so paid on the ground that it was illegally collected.

The trust indenture provides that the trustee shall hold the corpus of the trust, collect the income, and pay the same to certain beneficiaries named in the indenture until the death of the survivor of the donor and his wife. Upon the death of the survivor of the donor and his wife, the trust is to terminate. The indenture also provides that if the trust terminates upon the death of the donor, the corpus is to be paid over to the persons named by the donor in his last will and testament. If the trust terminates upon the death of the donor's wife or upon the death of the donor without his having exercised the power of appointment, the principal of the trust is to be divided among certain beneficiaries named in the trust indenture in the proportion therein set forth. Article tenth of the trust indenture reserves to the donor the right to modify

or alter the trust by changing the beneficiaries and the amounts of their beneficial interests, but expressly relinquishes all power in the donor to revest any interest in himself or his estate. This article tenth reads as follows:

"Tenth: Notwithstanding anything to the contrary herein contained, the Donor may from time to time during his lifetime by instrument in writing, executed, acknowledged and delivered to the Trustees, modify or alter this agreement and the trusts then existing, including (without limiting the generality of the foregoing) the power to change the beneficiaries of the income and principal thereof, and to increase or decrease their beneficial interest hereunder; provided, however, that the Donor shall have no power to modify or alter this agreement or the trusts at any time existing hereunder so as to increase directly or indirectly the interest of the Donor or his estate in the income from the trust funds or to cause any part of such income to be applied to the payment of premiums upon policies of insurance on the life of the Donor nor to revest in the Donor or his estate title to any part of the principal of the trust funds or accumulated income thereon."

The Gift Tax Act of 1932, § 501, 47 Stat. 245 (26 U.S.C.A. § 550), provides:

"(a) For the calendar year 1932 and each calendar year thereafter a tax, computed as provided in section 502 [551], shall be imposed upon the transfer during such calendar year by any individual, resident, or non-resident, of property by gift.

"(b) The tax shall apply whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible."

The plaintiff contends that as the grantor reserved the right to modify or alter the agreement by changing the beneficiary of the income or the principal and to increase or decrease their beneficial interest therein, except that he cannot name his estate or himself as the beneficiary, there was no taxable gift under the Gift Tax Act of 1932, for the reservations made by the donor made the gift incomplete. The question presented is, whether a transfer in trust in which the donor reserves the power to change the beneficiaries and the amounts of their interest, but expressly relinquishes any power to revoke or to revest in himself any interest therein, is a gift taxable under the Revenue Act of 1932.

The Revenue Act of 1932, as amended (26 U.S.C.A. § 550 et seq.), imposing the gift tax makes no reference to the effect of the retention of a power to revoke upon the applicability of the tax. Section 501(c) of the Revenue Act of 1932 (26 U.S.C.A. § 550 note) provided that the gift tax should not apply to transfers of property where the grantor had retained a power to revest title to the property in himself. Section 501(c), however, was repealed by section 511 of the Revenue Act of 1934, 48 Stat. 758. It was repealed not because it was desired to change the rule, but this section became unnecessary in view of the decision of the Supreme Court in Burnet v. Guggenheim, 288 U.S. 280, 53 S.Ct. 369, 77 L.Ed. 748, which definitely established the rule that a transfer of title by deed of trust reserving power of revocation in the grantor was not taxable while that power existed and only became so when it was surrendered.[1]

The provision in the repealed section 501(c) of the Revenue Act of 1932 providing that the tax should not apply to transfers of property where the grantor retained power to revest title to the property in himself was not exclusive and did lay down a rule for trusts in which other powers less broad than the power to revest title in the donor were involved. It may well be that the intention of the Congress in repealing section 501(c) was not only to do away with a section which had become unnecessary in view of the decision of the Supreme Court in the Guggenheim Case, but also to avoid any precise definition by statute of what did or did not constitute a taxable gift where the donor had created a trust retaining powers of control or final disposition of the property trusteed, and to substitute the broader and more flexible rule, namely, the application of the principles established by that case.

---

[1] Both reports state with respect to section 511 of the 1934 act: This section repeals section 501(c) of the Revenue Act of 1932 since the principle expressed in that section is now of fundamental part of the law by virtue of the Supreme Court's decision in the Guggenheim Case (288 U.S. 280, 53 S.Ct. 369, 77 L.Ed. 748).

In the Guggenheim Case the question of whether or not deeds of trust made in 1917 with a reservation to the grantor of a power of revocation became taxable as gifts under the Revenue Act of 1924, when in 1925 there was a change in the deeds by cancellation of the power. The gift tax imposed under the 1924 act is substantially the same as the gift tax imposed under the Revenue Act of 1932. The donor had created a trust in 1917 retaining the power to revoke. In 1925, while the act of 1924 was still in effect, he canceled the power to revoke. The Supreme Court held that such cancellation was subject to a gift tax and said that it was necessary in passing upon the question, when a trust had been created in which the grantor retained power of dominion or control, to determine whether the taxable gift occurred when the trust was created or when the power to revoke was surrendered. In the Guggenheim Case Mr. Justice Cardozo said:

"If a revocable deed of trust is a present transfer by gift, there is not another transfer when the power is extinguished. If there is not a present transfer upon the delivery of the revocable deed, then there is such a transfer upon the extinguishment of the power. There must be a choice, and a consistent choice, between the one date and the other." 288 U.S. 280, at page 285, 53 S.Ct. 369, 370, 77 L.Ed. 748.

"The tax upon gifts is closely related both in structure and in purpose to the tax upon those transfers that take effect at death. What is paid upon the one is in certain circumstances a credit to be applied in reduction of what will be due upon the other, 43 Stat. 315, § 322, 26 U.S. C. § 1134 [26 U.S.C.A. § 413 (a) (1) and note]. The gift tax is part 2 of title 3 of the Revenue Act of 1924; the estate tax is part 1 of the same title. The two statutes are plainly in pari materia. There has been a steady widening of the concept of a transfer for the purpose of taxation under the provisions of part 1. Tyler v. United States, supra [281 U.S. 497, 50 S.Ct. 356, 74 L.Ed. 991, 69 A.L.R. 758]; Chase National Bank v. United States, supra [278 U.S. 327, 49 S.Ct. 126, 73 L. Ed. 405, 63 A.L.R. 388]; Saltonstall v. Saltonstall, supra [276 U.S. 260, 48 S.Ct. 225, 72 L.Ed. 565]; cf. Bullen v. Wisconsin, 240 U.S. 625, 36 S.Ct. 473, 60 L. Ed. 830. There is little likelihood that the lawmakers meant to narrow the concept, and to revert to a construction that would exalt the form above the substance, in fixing the scope of a transfer for the purposes of part 2. We do not ignore differences in precision of definition between the one part and the other. They cannot obscure identities more fundamental and important. The tax upon estates, as it stood in 1924, was the outcome of a long process of evolution; it had been refined and perfected by decisions and amendments almost without number. The tax on gifts was something new. Even so, the concept of a transfer, so painfully developed in respect of taxes on estates, was not flung aside and scouted in laying this new burden upon transfers during life. Congress was aware that what was of the essence of a transfer had come to be identified more nearly with a change of economic benefits than with technicalities of title. The word had gained a new color, the result, no doubt in part, of repeated changes of the statutes, but a new color none the less." 288 U.S. 280, at pages 286, 287, 53 S.Ct. 369, 371, 77 L. Ed. 748.

From the above, it will be observed that in substance the court stated that in determining whether the making of the trust or the cancellation of the power to revoke constituted the transfer of economic substance on which the gift tax should be imposed, the concept of a transfer developed in respect of taxes on estates was not to be disregarded, and the court in effect held that if the cancellation of a power of revocation by death subjected a trust to an estate tax, the cancellation during the donor's life would subject the trust to a gift tax.

The Saltonstall, the Chase National Bank Cases referred to in Mr. Justice Cardozo's opinion, and Reinecke v. Northern Trust Company, 278 U.S. 339, 49 S. Ct. 123, 73 L.Ed. 410, 66 A.L.R. 397, held that the extinguishment of the power of revocation subjected the property to the estate tax.

It would seem to follow that if the termination by death of the power to revoke resulted in a transfer of ownership subject to the estate tax, that the previous placing of the property in trust subject to the power had not effected a transfer of ownership; otherwise there would have been no interest left on which to impose an estate tax. Cf. Heiner v. Donnan, 285 U.S. 312, at page 323, 52 S.Ct. 358, 76 L.

Ed. 772. It would also seem logically to follow that if the cancellation of the power to revoke is a transfer subjecting the property to a gift tax, the creation of a trust retaining the power would not be subject to a gift tax.

In view of the principles mentioned and the ruling in Porter v. Commissioner, 288 U.S. 436, 53 S.Ct. 451, 452, 77 L. Ed. 880, holding under a substantially similar state of facts that the trust was subject to the estate tax, it would seem that the trust estate at bar is not subject to a gift tax. The Porter Case involved the question whether the provisions of the Federal Estate Tax Act found in section 302(c) and (d) of the Revenue Act of 1926 (44 Stat. 70) applied—where the grantor retained the right to "modify or alter in any manner this indenture, and any or all of the trusts then existing * * * but this power to modify or alter is not intended and shall not be construed to include the right to the Donor to make such modification or alteration in his own favor or in favor of his estate, but shall apply only so far as the interest of third parties may be concerned."

The court held that the trust was subject to estate tax, and then said:

"We need not consider whether every change, however slight or trivial, would be within the meaning of the clause. Here the donor retained until his death power enough to enable him to make a complete revision of all that he had done in respect of the creation of the trusts even to the extent of taking the property from the trustees and beneficiaries named and transferring it absolutely or in trust for the benefit of others. So far as concerns the tax here involved, there is no difference in principle between a transfer subject to such changes and one that is revocable." 288 U.S. 436, at page 443, 53 S.Ct. 451, 453, 77 L.Ed. 880.

In answer to the argument of the taxpayer that subjecting the transfers in question to an estate tax would have the effect of taxing gifts inter vivos that were fully consummated prior to the enactment of the statute by holding that no gift inter vivos was consummated until the death of the donor terminated his power to alter and amend the trust, the court said:

"They treat as without significance the power the donor reserved until himself alone and ground all their arguments upon the fact that deceased, prior to such enactment, completely divested himself of title without power of revocation. It is true that the power reserved was not absolute as in the transfer considered in Burnet v. Guggenheim. * * * But the reservation here may not be ignored for, while subject to the specified limitation, it made the settlor dominant in respect of other dispositions of both corpus and income."

From the above it appears that the Supreme Court treated the reservations by the donor of his power over the corpus of the trust as sufficient to prevent it from being a gift inter vivos and to make it taxable upon the donor's death. Cf. Nichols v. Coolidge, 274 U.S. 531, 47 S.Ct. 710, 71 L.Ed. 1184, 52 A.L.R. 1081.

The Revenue Act 1932, § 501(a) and (b), imposes a tax upon the transfer of property "by gift" whether the transfer is in trust or otherwise. But there must be a "gift" if the gift tax is to apply. The requirement of the statute that there must be a gift inter vivos is, of course, not altered by the rules laid down in the Guggenheim and other cases. They decided only whether under settled principles of law certain acts of the donor of a trust fund constituted a completed gift before his death or not.

Was there an actual gift when the donor of the trust in the case at bar retained the power to change the beneficiaries of the interest and principal thereof, or to increase or decrease their participation in the fund; also to remove the named trustees and to substitute others in their places? To be sure, he could not himself use the stock or the income accruing from it. But he was still free to bestow these upon any one he wished to. He could get no part back for himself, but as yet he had given it to nobody—a general situation similar to that which existed in the Porter Case. And in the latter case the court stated, "There is no difference in principle between a transfer subject to such changes and one that is revocable." The Board of Tax Appeals in Adolph Weil v. Com'r, 31 B.T.A. 899, defined a gift as "the irrevocable transfer of the present legal title and of the dominion and control of the entire gift to the donee, so that the donor can exercise no further act of dominion or control over it." This definition is generally accepted. Dollie Stine v. Com'r, 32 B.T.A.

482; Theodore C. Jackson et al. v. Com'r, 32 B.T.A. 470; Max R. Bardach v. Com'r, 32 B.T.A. 517; Delight Ward Merner v. Com'r, 32 B.T.A. 658; Vincent v. Rix, 248 N.Y. 76, 161 N.E. 425; In re Bostwick, 160 N.Y. 489, 55 N.E. 208; In re Hoyt's Estate, 86 Misc. 696, 149 N.Y.S. 91.

In Commissioner v. Chase National Bank, 82 F.(2d) 157, the Circuit Court of Appeals for this Circuit held that the inclusion of trust corpus in decedent's estate for purpose of determining estate tax was justified notwithstanding trust was irrevocable, where trust deed reserved to decedent power to alter proportions in which her descendants should take property in accordance with original terms of trust deed, and said:

"Up to the time she died she had the power to alter the proportions in which her descendants should take the property in accordance with the original terms of the trust instrument. She could have limited any, or all but one, of them to a nominal amount and given all of real value to one or to such of them as she pleased. * * * The power she reserved was not to change the trust provisions in a trivial way, but went right to the heart of them and gave the decedent a substantial though qualified control over the trust property until her death." 82 F.(2d) 157, at page 158.

See, also, Saltonstall v. Saltonstall, supra; Reinecke v. Northern Trust Company, supra; Witherbee v. Commissioner (C.C.A.) 70 F.(2d) 696; Stewart W. Bowers, Trustee, v. Com'r, 34 B.T.A. 597; Mead v. Welch (D.C.) 13 F.Supp. 981; Fidelity-Philadelphia Trust Co., Trustee v. Com'r, 34 B.T.A. 614.

This is not one of the exceptional transfers which are subject to a gift tax and an estate tax. There are two of these exceptions. One of these is referred to in section 302 of the Revenue Act of 1926 (44 Stat. 70), which has to do with trusts where the donor has reserved to himself some interest in the trust fund, but has made a valid and complete gift of the remaining interest. The other exception is a gift made in contemplation of death, when the character of the gift may only be determined after the death of the donor and until that time they are prima facie similar to any other gift.

The Reports of the Congressional Committee relative to the 1932 Revenue Act and of the Senate Finance Committee indicate that the purpose of the gift tax was to supplement the estate tax. The Report of the Congressional Committee says that the intention was, "To impose a tax which measurably approaches the estate tax which would have been payable on the donor's death and the gifts not been made and the property given had constituted his estate at his death. The tax will reach gifts not reached for one reason or another by the estate tax." (P. 28)

In this report it refers to the gift tax as "an adjunct of the estate tax." The Report of the Senate Finance Committee is to the same effect.

Viewed in the light of the inferences logically drawn from the decisions discussed and the general concept of what constitutes a gift, I do not think that the trust made by the donor at bar was a completed taxable gift.

The motion to dismiss the complaint is therefore denied.