W. S. Bridgewater *et al. v.* Bettie J. Turner *et al.*

(*Nashville,* December Term, 1929.)

Opinion filed June 28, 1930.

112

T. G. HINSON, for complainants, appellees.

H. B. McGinness, Fisher & Key, Chas. S. Seay, Clint Beasley and Stickley & Fitzhugh, for defendants, appellants.

Mr. Chief Justice Green delivered the opinion of the Court.

This is a controversy among the heirs and devisees of Thomas J. Seay in which they seek a construction of his will and to have the title to a certain tract of land settled. The will contains the following clause:

"I bequeath to Eliza V. Seay during her life that portion of the old home tract and household furniture and etc., which lies between the Trousdale Ferry turnpike road and the creek of Round Lick and Jennings Fork, and, at her death I desire it to go to one of my nephews and I leave it with her to decide which one it shall be. . . . It is my desire that the above described tract shall remain in the hands of the family as long as possible, for here sleeps my wife, my father and mother."

At the execution of this will and upon the death of the testator, it appears from a stipulation herein that he had four nephews, W. S. Bridgewater, John C. Bridgewater, W. R. Seay and Richard Seay. Richard Seay died before the death of the life tenant, Eliza V. Seay, leaving two children, Elizabeth Seay Strain and Carr Crenshaw Seay. This litigation arose upon the life tenant's death.

The chancellor held that the three nephews and the children of the deceased nephew had title to the land. By separate appeals and proper assignments of error, the chancellor's decree is questioned (1) because he did not decree title to be in all the heirs at law of Thomas J. Seay as intestate property; (2) because he did not decree title to be in the residuary devisees under said will,

and (3) because he did not decree title to be in the three surviving nephews, excluding the children of the deceased nephew.

██ Except that the power of appointment given to the life tenant is restricted to one, instead of to one or more, of a class, the case seems to be controlled by a rule of construction that has been uniformly followed in this State. Perhaps the best formulation of this rule is contained in *Burrough* v. *Philcox,* 8 My. and Cr., 72, in these words:

"When there appears a general intention in favor of a class and a particular intention in favor of individuals of a class to be selected by another person, and the particular intention fails, from that selection not being made, the court will carry into effect the general intention in favor of the class."

In *Cathey* v. *Cathey,* 28 Tenn. (9 Humph.), 470, the will read:

"I give and bequeath to my beloved wife, Honor B. Cathey, all my property, both real and personal, for her to divide among my children, as she may think best; but if she should marry after my death, then, in that case, it is my will and desire that my estate be equally divided among her and my children, share and share alike."

Mrs. Cathey did not marry nor did she make any disposition of the property during her life. The court found that no appointment was made by Mrs. Cathey; that testator's children took a vested interest in his estate immediately upon his death as a class; that by the exercise of the power of appointment such estate might have been divided unequally among them; but no appointment having been made, the estate remained vested in the children in equal portions.

In *Cruse* v. *McKee,* 39 Tenn. (2 Head.), 1, the testator gave the negroes, Fanny, Rina and James, to his wife during her lifetime and added: "It is further my will and desire that my negroes, Fanny, Rina, and James, be disposed of by my wife Rebecca, with their increase, to the whole, or any one, or more of my children she may think proper, at her decease." Construing this language, the court said:

"In this case the widow's estate is for life only, by implication with power to control the remainder to a limited extent, and in a certain mode. The limitation was to his children. They, as a class, had a vested joint remainder under the will; but the power was given to her to defeat this interest of any one or more, by the exercise of the power given, but in case she failed to appoint, or made an invalid appointment, then the property would go to all, equally, under his will, at her death."

In this case the testator's wife undertook to exercise the power of appointment by will unequally among such of her children as were then living and to some of her grandchildren. The court held the appointment to the children good but the appointment to the grandchildren bad, because the power to appoint to children does not include the power to appoint to grandchildren. *Jarnagin* v. *Conway,* 21 Tenn. (2 Humph.), 50. That portion of the property which she undertook to appoint to the grandchildren was treated as though no appointment had been made respecting them and it was divided in equal proportions among the children and the representatives of deceased children.

In *Roger* v. *Rogers,* 39 Tenn. (2 Head), 660, the testator bequeathed to his wife during her lifetime or widowhood seven slaves, by name. If she died his widow she was given the privilege of giving said negroes to whom

she pleased among his children or grandchildren. The widow died without having married and without disposing of the slaves. The court said:

"Now, can there be a doubt, if we look to the entire will, that the testator intended, in the events that have happened, to dispose of them (the slaves); and that upon the death of his wife, his children and grandchildren should take them? We think not. And that it must be held a gift to them by implication, subject to the power which the testator, for wise and obvious reasons, intended she, at her death, might exercise among his children or grandchildren."

The rule quoted from *Burrough* v. *Philcox* and applied in the foregoing cases was approved in *Jarnagin* v. *Conway*, 21 Tenn. (2 Humph.), 50; *Haywood's Heirs* v. *Moore, Ibid*, 584; *Herrick* v. *Fowler*, 108 Tenn., 410, and has been noticed with approval by this court in other cases.

In *Rogers* v. *Rogers, supra,* upon a review of the authorities, it was held that the courts would endeavor at the present day to construe a devise of this description into a gift by implication to the objects of the power, in default of exercise of the power, rather than as a power in the nature of a trust enforceable in favor of the objects of the power. This was approved in *Herrick* v. *Fowler, supra,* although, in the latter case, the power of appointment was exercised and the court had no occasion to consider the result in default of the exercise of such power. The language of the court in *Cathey* v. *Cathey, supra,* and in *Cruse* v. *McKee, supra,* shows those cases to be in thorough accord with *Rogers* v. *Rogers,* in this respect.

The implication of a gift to the class, in default of appointment, seems quite as plain in this will as in the

wills before the court in the cases from which we have quoted.

This is true unless the restriction of the power of appointment to one member of the class negatives an intent in favor of the class. We think the restriction does not have this effect.

In *Cruse* v. *McKee*, for instance, the life tenant might have appointed to one.

In the present case the life tenant must have appointed to one.

In either case, the class from which the selection was to be made was designated by the testator. In either case each member of the class was a taker in default of appointment. As long as everyone of a class is a taker, although a defeasible taker, of testator's bounty, the general intent of the testator is in favor of the class.

The appellants herein rely largely on an argument of some of the counsel and upon remarks of the judges in *Brown* v. *Higgs*, reported in 4 Ves. Jr., 708, 5 Ves. Jr., 495, and in 8 Ves., 561. This case was heard twice before the Master of Rolls and once on appeal before Lord Chancellor Eldon. Only one branch of the case was decided and in that branch of the case the rule heretofore quoted from *Burrough* v. *Philcox* appears to have been first announced. The other branch of the case related to what the testator described as the "Lower Swell" estate which the testator devised to his nephew John Brown and to the heirs male of his body lawfully begotten "and in default of such heirs to one of the sons of my nephew Samuel Brown, as the said John Brown shall direct by a conveyance in his lifetime or by his last will and testament."

We gather that John Brown died without heirs male of his body and without having exercised the power of ap-

pointment and that the question was whether this devise lapsed. As said before, this question appears not to have been ready for decision and was not decided but was discussed by counsel and noticed by the judges.

One of the lawyers argued that there could be no general intention in favor of all the children of Samuel Brown, "where one only is to take, it cannot be said, all are to take." Other lawyers asked the question: "How can the court in execution of the trust devolving on it do that, which the trustee could not have done?" The point of the question, of course, was that since the donee of the power could not have appointed the estate to more than one of the sons of Samuel Brown, the devise could not be regarded as a trust in favor of all the sons of Samuel Brown, which the court might execute. Although there was no decision, observations of the judges indicated that they were impressed by these arguments.

Such arguments would be strong indeed if we were required to treat the devise before us as a power in the nature of a trust in favor of the objects of the power. Treating the devise, however, as a gift by implication in favor of testator's nephews in default of appointment, such arguments lack force. And it is in the latter aspect, under our decisions, that the devise must be regarded.

We see no reason why the objects of a gift, subject to be divested by the exercise of a power, should be identical with the objects of the power. The trust idea out of the way, the question is whether the objects of the gift have been identified with sufficient certainty in the will. We think they have and it seems immaterial, so far as their estate is concerned, whether it is subject to divestiture by the exercise of the power of appointment to one of their number, to two of their number, or to a stranger.

In addition to what we have heretofore said, comparing the language of this will with the language used in wills heretofore construed by this court, other expressions of the testator indicate that he intended his nephews should take this land in default of an appointment to one of them.

He said: "It is my desire that the above described tract shall remain in the hands of the family as long as possible, for here sleeps my wife, my father and mother."

The stipulation in this case shows that at the death of testator he had two living sisters, three living brothers and the four nephews mentioned. For the reasons stated, he desired the homeplace to remain in the hands of the family as long as possible. His nephews, younger than his brothers and sisters, would naturally live and be able to hold the land longer than the latter. The entire clause of the will heretofore quoted evinced entirely impartiality on the part of the testator as among his nephews. He plainly had no wish to prefer one nephew above the others. His concern was to dispose of the land in that way that would keep it in the family the longest—not in any one member of the family. That end could best be attained by giving the land to such of the family—that group of the family, with the longest prospect of life and capacity to hold the land.

The intent thus evinced was modified by the solicitude of the testator for his sister Eliza V. Seay. The stipulation discloses that she was forty-three years of age, was unmarried, lived with him, was in poor health, and believed to be afflicted with tuberculosis. The power of appointment given to her was obviously for her own benefit, to stimulate the interest of all the nephews in her welfare by making it possible for her to reward the one most devoted. The sister having failed to exercise this power,

apparently having found no reason to do so, we are satisfied.the chancellor correctly interpreted the wishes of the testator in decreeing the property to the three nephews surviving and the children of the deceased nephew.

That the children of the deceased member of the class take the share of their parent, when the power of appointment is not exercised, is definitely decided in *Cruse* v. *McKee, supra.* This is necessarily true because as heretofore seen the members of the class take a *vested* remainder subject to be defeated by the exercise of the power. The remainder being vested, what is known as the class doctrine in this State has no application.

The decree of the chancellor is affirmed.