THE AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHATTANOOGA, Executor of the ESTATE of INEZ BROWN, Deceased, Appellee-Appellant.

*v.*

THOMAS D. BENSON, Commissioner of Revenue, State of Tennessee, Appellant-Appellee.

474 S.W.2d 427.

(*Nashville,* December Term, 1971.)

Opinion filed December 6, 1971.

DAVID M. PACK, Attorney General, EVERETT H. FALK, Assistant Attorney General, for appellant-appellee.

HOWARD I. LEVINE, MILLER, MARTIN, HITCHING, TIPTON, LENIHAN, & WATERHOUSE, Chattanooga, for appellee-appellant.

MR. JUSTICE HUMPHREYS delivered the opinion of the Court.

The American National Bank and Trust Company of Chattanooga, sued Thomas D. Benson, Commissioner of Revenue, State of Tennessee to recover inheritance taxes and interest paid under protest by it as executor of the estate of Inez Brown. After a trial on answer and stipulation, a decree was entered awarding recovery as to a portion of the tax, and denying recovery as to the other portion. Both parties have appealed and assigned error.

The material facts of the case as admitted and stipulated are that decedent, Inez Brown, was the trustee

under a declaration of trust. Under the terms of the trust Inez Brown was to enjoy the income from the trust for life, and, upon her death, the corpus of the trust was to be distributed to the sister of Inez Brown, Mary B. Harding, and/or her issue, subject to a power of appointment in Inez Brown to appoint the corpus to members of this class in such portions as she might see fit. At the time Inez Brown died, Mary B. Harding was dead, and the class of possible appointees so far as appears from the record, included John Slosson Harding, her son, and Elizabeth Harding Wolf, her daughter, and three children of Elizabeth Harding Wolf.

At her death on December 28, 1967, Inez Brown exercised her power of appointment in her will and appointed the trust corpus to John Slosson Harding and the three children of Elizabeth Harding Wolf. John Slosson Harding was appointed one-half of the trust corpus and the three children of Elizabeth Harding Wolf were appointed the other half in equal shares. Nothing was appointed to Elizabeth Harding Wolf, who, prior to the death of Inez Brown, had been adjudged legally incompetent and continued as such until her death, intestate, approximately eight months after the death of Inez Brown.

Because of the testamentary exercise of the power of appointment by Inez Brown, the Commissioner of Revenue included the corpus of the trust estate Inez Brown appointed for inheritance tax purposes, pursuant to T.C.A. sec. 30-1602(h), and assessed additional inheritance taxes in the amount of $101,442.19, plus interest. The American National Bank, as executor, paid this assessment under protest and sued to recover it.

The executor's theory of suit was that John Slosson Harding took under the power of appointment the same interest in the trust that he would have taken had the power not been exercised, and so no tax was payable. The executor's contention with respect to the portion of the trust fund appointed to the three children of Elizabeth Harding Wolf was that since Elizabeth Harding Wolf was incompetent to make any disposition of her property by will, by force of the facts, her children were in much the same situation as their uncle, John Slosson Harding, in that they would have ultimately received through the laws of descent and distribution the same interest appointed to them; with the result, as contended for in John Slosson Harding's case, that no inheritance tax was due the State of Tennessee.

The Chancellor held in a memorandum opinion that the inheritance tax should not have been imposed on the portion of the trust corpus appointed to John Slosson Harding, and that the inheritance tax was properly imposed on the portion appointed to the three children of Elizabeth Harding Wolf. Decree was entered accordingly, and both the commissioner and the executor have appealed.

The errors assigned by the executor to the Chancellor's holding that the appointment to Mrs. Wolf's children was taxable are:

(1) That the Wolf portion of the trust corpus was already vested in the appointees and so no taxable transfer resulted from Miss Brown's exercise of the power of appointment under sec. 30-1602(h) T.C.A.

(2) That the designation by Miss Brown of the recipients of the Wolf portion was not an effective exercise of the power of appointment.

(3) That the Tennessee Inheritance Tax Law does not tax the mere exercise of a power of appointment.

The Commissioner's assignments of error make the contention that the Chancellor erred in holding that Miss Brown's exercise of the power of appointment to John Slossom Harding was not taxable as in form only and transferred nothing to the appointee, because, in law and in fact, a taxable act, the exercise of a power of appointment, as prescribed by sec. 30-1602(h) T.C.A., had occurred.

We are of opinion the assignments of error of the executor are not well taken and must be overruled, while the assignments of error of the Commissioner must be sustained.

Dealing first with the contention that the inheritance tax law does not tax the exercise of a power of appointment, we deem it unnecessary to discuss and distinguish the executor's authorities, being of opinion the statute, itself, supports, in fact requires, the tax. Section 30-1602(h) provides that "transfers under powers of appointment shall be taxable in like manner and to the same extent as if property of the testator or donor was transferred." It is impossible to read this statute, bearing in mind the result sought, without appreciating that the tax is laid upon the exercise of the power of appointment, so that common law concepts as to the nature of powers of appointment and the interest of the donee of the power and the appointees thereof are inconsequential.

The tax is laid on *"transfers* under powers of appointment" which, in context, purpose and intent, means the *exercise* of the power of appointment; and upon the privilege of receiving, pursuant to the exercise of the power. This interpretation of the statute is consistent with its provision that the tax is levied, not with respect to the act of the donor of the power, but, with respect to an act by the donee, a "transfer", which can only be accomplished by the exercise of the power of appointment.

This statutory conception results in the taxation of the receipt of property by will, statutes of descent and distribution, and the exercise of the power of appointment; an arrangement encompassing the various means by which the devolution of property is accomplished.

*Bridgewater v. Turner,* 161 Tenn. 111, 29 S.W.2d 659 (1929), on which the executor relies, is not in point. That case did not involve the inheritance tax statutes. It dealt with the common law theory of vesting of unappointed interests, and held that where the life tenant died without exercising a testamentary power of appointment in favor of a class consisting of nephews, that not only the surviving nephews, but their representatives, took as a class in whom the estated had vested on the creation of the power. This holding is consistent with the common law theory that property which is the subject of the donation of a power vests in the possible appointees by implication of a gift to a class in default of appointment. *Rogers v. Rogers,* 39 Tenn. (2 Head) 660; *Bridgewater v. Turner,* supra.

However, this argument, that the property vests in the possible appointees on the creation of the power so that

there is no taxable transfer on the death of the donee, has been made in tax cases before this time, and, where the tax is laid upon the exercise of the power, as in our statute, it has not prevailed. We quote from *Chanler v. Kelsey*, 205 U.S. 466, 27 S.Ct. 550, 51 L.Ed. 882 (1907): "However technically correct it may be to say that the estate came from the donor and not from the donee of the power, it is self-evident that it was only upon the exercise of the power that the estate in the plaintiffs in error became complete. Without the exercise of the power of appointment the estates in remainder would have gone to all in the class named in the deeds of William B. Astor. By the exercise of this power some were divested of their estates and the same were vested in others. It may be that the donee had no interest in the estate as owner, but it took her active appointment to finally transfer the estate to some of the class and to take it from others." While the case quoted from is different from this one on its facts, the proposition of law quoted is particularly applicable.

The contention that the exercise of the power of appointment in favor of the Wolf children is not taxable as an empty exercise of the power of appointment, is not valid. This contention is based on New York cases.[1] But, under the rule as stated in the New York cases this appointment would be taxable. The New York rule is that the exercise of a power is not taxable to the estate of the appointee where the appointment is identical in amount and persons with those who would have taken in default of exercise of the power or where a beneficiary

---

[1] *In re Matter of Lansing's Estate*, 182 N.Y. 283, 74 N.E. 882 (1905); *In re Duryea's Estate*, 277 N.Y. 310, 14 N.E. 2d 369 (1938).

receives less than he would have taken in default of the exercise.

It is evident that under the New York rule the appointment of a portion of the property to the Wolf children would be taxable. This is true because, in the absence of an appointment, under the trust agreement Mrs. Wolf would have taken as a surviving child of Mrs. Harding and the grandchildren would have received nothing.

The exercise of the power of appointment in favor of John Slosson Harding is taxable, because the power of appointment *was* exercised in his favor, he did *not* renounce the appointment so as to risk the hazard of the amount he would take under the trust, and the power of appointment was, in balance, beneficial to him.

Section 30-1602(h) T.C.A. taxes the exercise of the power of appointment and makes no exceptions such as that contended for by the executor. While the courts of other states may be at liberty to import exceptions into the written provisions of a taxing statute, our case law is against this. It is settled in Tennessee that, where, according to the language of the statute, there has been a taxable incident, it shall be taxed unless there is in the statute, itself, some language which furnishes a basis for foregoing taxation. *American Natl. Bank v. MacFarland,* 209 Tenn. 263, 268, 352 S.W.2d 441; *Karsch v. Atkins,* 203 Tenn. 350, 313 S.W.2d 253.

This rule, which recommends itself for many reasons, one which is that it simplifies the administration of tax laws by avoiding construction by tax officials of complicated testamentary and trust instruments, is not without fairness. In the present case, John Slosson Harding had

the choice to take under the appointment or to renounce it. He took under the appointment, so he must pay the tax. This arrangement is fair to both the state and the appointee.

We are aware that the New York rule in its ultimate elaboration requires no renunciation. (As perforce had to be the case once this doctrine was announced). But, having decided that we cannot follow the New York rule, we must also reject the non-necessity of a renunciation of appointment.

Our conclusion that the appointment was not empty, but beneficial, is predicated on the provisions of the declaration of trust creating the power of appointment. These pertinent provisions are as follows:

"3. I am to enjoy the income from the trust estate during my life, but I received the trust estate from Elizabeth W. Wheeler subject to the trust that the principal should, at my death, go, free from trust, to said Mary B. Harding and/or her issue, subject to the power of appointment hereinbelow set out. It was and is a part of the trust agreement that I should determine and designate in my will which of the possible beneficiaries mentioned in the preceding sentence hereof shall receive said principal. The only persons whom I could, under the original trust agreement, designate in my will to receive said principal were limited to said Mary B. Harding and/or her issue. Since said Mary B. Harding is now dead, the only persons whom I can so designate in my will are those persons who are the issue of said Mary B. Harding; but, within those limits, I can designate any of those persons whom I decide proper, in my discretion, and I can determine,

in my discretion, the respective proportions of the principal to be received by the persons designated by me, and I can omit any one or more of such persons from my designation, subject to the condition that I must so designate one or more of the persons who are the issue of said Mary B. Harding.''

Under the broad powers of appointment created by this trust, Harding was not entitled by appointment to any fixed portion of the trust estate. He was entitled, in the absence of an appointment in his favor, to a child's share of the unappointed portion of the trust estate. To explain: The trust estate was to go to ''Mary B. Harding and/or her issue'' in the absence of the exercise of the power of appointment. This power of appointment was limited only to the issue of Mary B. Harding, which did not necessarily include John Slosson Harding. So, when one-half of the trust property was appointed to grandchildren, and their mother, Mrs. Wolf, was passed over, if there had been no appointment to Harding, or if Harding had renounced his appointment, this would have left one-half to pass under the terms of the trust: one-fourth to Harding and one-fourth to Mrs. Wolf.

While we, by no means, intend to decide the questions which we have suggested might have arisen on renunciation, the avoidance of the possible result we have mentioned, or expensive litigation about it, by taking under the appointment, could have been beneficial to Harding.

In sum, we dismiss the original bill and tax the executor bank with the costs.

DYER, CHIEF JUSTICE, CRESON and McCANLESS, JUSTICES, and JENKINS, SPECIAL JUSTICE, concur.